[No. B063908. Second Dist., Div. Four. Aug. 5, 1994.]

In re ANDREW S. et al., Persons Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN'S
SERVICES, Plaintiff and Respondent, v.
PAUL S. et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I, II and IV of Discussion.

**COUNSEL**

Phillip I. Bronson, Roni Keller and Estelle A. Schleicher, under appointments by the Court of Appeal, for Defendants and Appellants.

De Witt W. Clinton, County Counsel, Joe Ben Hudgens, Deputy County Counsel, and Jeanette Malouf for Plaintiff and Respondent.

**OPINION**

**EPSTEIN, J.**—Appellants Paul S. (father) and Marlene B. (mother) appeal from a judgment terminating their rights to parent their four minor children. They contend the judgment must be reversed because they were not provided with adequate reunification services. Mother also contends the minors should have been returned to her at the time of the permanency planning hearing, that she was wrongfully deprived of counsel at the hearing in which her parental rights were terminated, and that the trial court erred in selecting the option of adoption rather than guardianship for her children.[1]

In the published part of this opinion we conclude the trial court erred in depriving mother of counsel at the Welfare and Institutions Code section

---

[1] The original opening brief filed on mother's behalf on November 3, 1992, requested this court to independently review the record pursuant to *In re Brian B.* (1983) 141 Cal.App.3d 397 [190 Cal.Rptr. 153], and *People* v. *Wende* (1979) 25 Cal.3d 436 [158 Cal.Rptr. 839, 600 P.2d 1071], to determine whether any arguable appellate issues exist. Mother filed a supplemental brief on her own behalf in October of 1993. Thereafter, different counsel was appointed to represent mother. A second supplemental opening brief was filed by her counsel on December 6, 1992. The contentions which we address in this opinion are raised in that brief.

$366.26^2$ hearing, but that the error is not per se reversible and was harmless under the circumstances in this case. We also comment about the delay in the trial and appellate proceedings. In the unpublished portion of the opinion we reject the other grounds asserted as a basis for reversal.

## FACTUAL AND PROCEDURAL SUMMARY

Deputy sheriffs went to appellants' home four or five times between 1987 and 1989, primarily in response to the children's calls regarding family disturbances. In August of 1987 they investigated allegations that three- and one-half-year-old Brandy S. had been sexually molested by a fifteen-year-old boy named Jimmy.[3]

On April 26, 1988, they responded to a call reporting suspicious circumstances, including a woman screaming, at appellants' residence. When they arrived they found father sitting on the front porch. He told the officers there was no problem. Mother was shaking and crying and had reddish marks around her neck. She told police she was afraid of father. She said he was violent, and she feared he would kill her.

On August 26, 1988, deputy sheriffs arrested father for violation of Penal Code section 273.5 (felonious corporal injury on spouse or cohabitant), but mother refused to prosecute.

On July 19, 1988, the sheriff received a call of a domestic dispute in a trailer park, possibly a man with a gun. When deputies arrived, they found mother and her children in an unfurnished trailer. Inside, there were mildewed clothes in a cardboard box and mushy fruit on the floor. The refrigerator did not work, and flies flew around an open package of lunch meat in the kitchen. Everything was very dirty, including the children. The two-month-old infant (Jacob S.) and the one-year-old baby (Danielle S.) had severe diaper rashes. Danielle also had a bad cough, a runny nose, and scabs on her upper lip, and appeared to have a fever.

Mother said she and father had been in a fight. She had a black eye. She told deputies they were staying at the trailer park and had nowhere else to go. She said she had no one to call to help her with the children and had no

---

[2]All further code citations are to the Welfare and Institutions Code unless otherwise indicated.

[3]Father testified that he had the boy arrested after he found him and Brandy in the backyard with their pants off. The boy admitted digital and penile penetration, and was sent to youth camp.

money at all. Mother said she was afraid of her husband.[4] She was arrested for domestic violence.[5]

Deputies took the children into custody and transported them to a hospital where they were cleaned and fed. Brandy, who was four and one-half years old at the time, said her mommy hurt her eye when daddy hit her.[6]

The proceedings in this case were protracted over a period of time beginning July 19, 1988, when the minors were detained, continuing with the filing of a dependency petition,[7] the sustaining of the petition (as amended to conform to proof) after an adjudication which was completed on July 18, 1989, a contested disposition hearing which ended on July 31, 1990, a permanency planning hearing completed on August 2, 1991, and ending with the order terminating parental rights on January 21, 1992. We shall have more to say about this delay at the conclusion of our discussion of the issues.

During this period the four minor children were placed in foster homes. Ultimately, two foster families each sought to adopt two of the children.

DISCUSSION

I, II*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

III

The section 366.26 hearing was held on January 21, 1992, to determine whether parental rights should be permanently terminated. Neither mother

---

[4]Actually, mother and father were not married.

[5]A deputy sheriff testified that he also arrested mother for child abandonment, but he did not present that charge to the district attorney. The sheriff concluded that mother just did not know how to take care of her children and needed more instruction.

[6]Father testified that he had an argument with the campground people over broken mustard and mayonnaise jars and a pile of ant hills. He denied having threatened to shoot or kill the campground supervisor. He claimed he walked from the campground (in El Monte) to Bellflower to get his jeep to pull the trailer. When he returned, the trailer and his family were gone. Campground people told him the family went to jail. When he called police, they told him he would never see his children again.

[7]The record does not contain the original petition, nor does it contain a reporter's transcript of the detention hearing, the detention order, the original jurisdictional hearing required to be held within 15 days of the detention order. (§ 334; Cal. Rules of Court, rule 1447(b).) Instead, the record before us begins with an amended petition filed on April 5, 1989, and the jurisdictional hearing commenced on that date and concluded on July 18, 1989.

*See footnote, *ante*, page 541.

nor father was present. Mother's counsel requested to be relieved due to a conflict of interest. Counsel said that at the last hearing mother complained that she had not been properly represented and stated that she intended to hire another attorney. Counsel represented that several lawyers had telephoned, saying they were going to represent mother, but no formal substitution of counsel was ever presented. Counsel informed the court that mother had called the court clerk that morning and left a telephone number in Kirkland, Washington. When counsel called that number, mother was not there. She had left a message, however, that she did not have the money to come to court.

The court relieved counsel, noting that mother had been ordered to be present. The court found that mother had purposefully absented herself from the hearing.

Upon the basis of a report filed by the children's social workers pursuant to section 366.26, and a stipulation that the two older minors, if called to testify, would say they wished to be adopted by their present caretakers, the court found it was in their best interests to be adopted. The court further found that mother and father had relinquished their parental rights.

■ Mother asserts that she was wrongfully deprived of counsel because her counsel did not notice a motion to be relieved and because the trial court granted the motion and proceeded with the case without notifying her. We agree.

Mother's attorney asked to be relieved on the spot, and the court granted her request. She told the court that mother had said something to her about trying to find another attorney. But there was no other attorney at the time, and counsel did not say that she had informed her client that she would seek to be relieved before the section 366.26 hearing.

At that point, the trial court had several options. The most obvious was to deny the motion because counsel had failed to demonstrate even a semblance of compliance with the statutory and rule requirements for being relieved. (Code Civ. Proc., § 284, subd. 2 and Cal. Rules of Court, rule 376.) Compliance with that procedure was especially important in this case, since section 317 gave appellant an undoubted right to be represented by counsel throughout the dependency proceedings. Her right was to be represented by

the same attorney ("vertical representation") unless that attorney was removed as provided in the statute itself.[10] Section 317, subdivision (d) requires that the counsel appointed "shall represent the parent, guardian, or minor at the detention hearing and at all subsequent proceedings before the juvenile court. Counsel shall continue to represent the parent or minor unless relieved by the court upon the substitution of other counsel or for cause." There was no substitution, no "cause" was presented, and even if it was, the governing procedures were not followed. "There is nothing vague or ambiguous about the legislative command—in the absence of a waiver, the juvenile court must appoint an attorney to represent an indigent parent at the detention hearing and at all subsequent proceedings, and the attorney *shall* continue to represent the parent unless relieved by the court upon the substitution of other counsel or for cause." (*In re Tanya H.* (1993) 17 Cal.App.4th 825, 829 [21 Cal.Rptr.2d 503], italics in original.)

The court also could have delayed acting on the request to be relieved until after the section 366.26 hearing, which was about to begin. Or it could at least have ameliorated its error in granting the motion by postponing the hearing. It selected none of these options. Instead, it granted the attorney's motion and proceeded with a hearing at which the mother was neither present nor represented, and in the face of information (in the social study report) that she opposed the recommended outcome, adoption of the child. That was serious error.

■ Ordinarily, it would be what Chief Justice Rehnquist has described as a "structural defect" in the trial of the case and, as such, reversible per se. (See *Arizona* v. *Fulminante* (1991) 499 U.S. 279, 309-310 [113 L.Ed.2d 302, 330-331, 111 S.Ct. 1246].) A further discussion is required to explain why it does not fall into that category in this case.

The question turns on the nature of the infringed right. The right to counsel in this case is statutory, being grounded in section 317. That statute vindicates what is often, but not always, a constitutional right. It is not a right of constitutional dimension at a section 366.26 hearing.

■ The right of an indigent in criminal proceedings to have appointed counsel at a trial leading to his or her imprisonment is long and well settled. (See *Gideon* v. *Wainwright* (1963) 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733]; *Argersinger* v. *Hamlin* (1972) 407 U.S. 25 [32

---

[10]Senate Select Committee on Children and Youth, Senate Bill No. 1195 Task Force Report on Child Abuse Reporting Laws, Juvenile Dependency Statutes, and Child Welfare Services (Jan. 1988) page 9. This is the report of the committee that formulated the legislation through which sections 317 and 366.26 were enacted. (See *Cynthia D.* v. *Superior Court* (1993) 5 Cal.4th 242, 246 [19 Cal.Rptr.2d 698, 851 P.2d 1307].)

L.Ed.2d 530, 92 S.Ct. 2006] and *Scott* v. *Illinois* (1978) 440 U.S. 367, 373 [59 L.Ed.2d 383, 388-389, 99 S.Ct. 1158].) The right to counsel in civil cases is evolving and is not attended by a bright line rule such as that which applies to loss of liberty. In *Lassiter* v. *Department of Social Services* (1981) 452 U.S. 18 [68 L.Ed.2d 640, 101 S.Ct. 2153], a dependency case, the court adapted the three-pronged test of *Mathews* v. *Eldridge* (1976) 424 U.S. 319, 335 [47 L.Ed.2d 18, 33-34, 96 S.Ct. 893] to determine when counsel must be appointed. These are: the private interests affected by the proceeding, the risk of error created by the state's chosen procedure, and the countervailing governmental interest supporting the challenged procedure. (452 U.S. at p. 31 [68 L.Ed.2d at p. 652].) Applying these criteria, the *Lassiter* court concluded that the Constitution does not require appointment of counsel in every parental terminination proceeding, but that an appointment was required for the mother in that case because of the critical nature of the determination being made—whether she had so neglected her children as to justify terminating her parental rights. (*Id.* at p. 32 [68 L.Ed.2d at pp. 652-653].)

*Lassiter* was revisited a year later in *Santosky* v. *Kramer* (1982) 455 U.S. 745 [71 L.Ed.2d 599, 102 S.Ct. 1388], a case involving the standard of proof required in dependency proceedings. The court concluded that the "fair preponderance of the evidence" standard for a determination of whether to terminate parental rights was inconsistent with due process. (455 U.S. at p. 758 [71 L.Ed.2d at p. 609].)

These authorities were reviewed by our Supreme Court in *Cynthia D.* v. *Superior Court, supra,* 5 Cal.4th 242. The issue in that case was whether the preponderance standard was an unconstitutionally low threshold for section 366.26 proceedings, since a possible outcome of those proceedings is permanent severance of parental rights. The court analyzed the statutory scheme in the California dependency law, as modified by the sweeping changes enacted in 1987. (5 Cal.4th at p. 246 et seq.) The court noted that a higher standard of proof is required at earlier stages, at which the principal predicate decisions about parental neglect and other delicts are made. It concluded that by the time the section 366.26 hearing is reached, "the evidence of detriment is already so clear and convincing that more cannot be required without prejudice to the interests of the adoptable child, with which the state must now align itself. Thus the proof by a preponderance standard is sufficient at this point." (5 Cal.4th at p. 256.)

That rationale applies to the right to counsel at a section 366.26 hearing. By the time the 366.26 hearing is held it already has been determined that the parent will not have custody of the child, and the issue to be

decided is whether to allow the child to be adopted. Certainly the mother has a stake in that decision, and it is proper that she have counsel at the hearing at which the issue will be decided. But in light of the standards announced by the United States Supreme Court and applied by our Supreme Court, we cannot say the appellant had a constitutional right to appointed counsel at the proceeding. (The court in *In re Laura H.* (1992) 8 Cal.App.4th 1689, 1693 [11 Cal.Rptr.2d 285], appears to reach a different conclusion. But that case was decided before *Cynthia D.*, and does not discuss the high court decisions reviewed in *Cynthia D. In re Arturo A.* (1992) 8 Cal.App.4th 229, 239 [10 Cal.Rptr.2d 131], also discussed the right to counsel at a section 366.26 hearing. That case, too, was decided before *Cynthia D.* The court discussed the right to representation by competent counsel at the section 366.26 hearing, as well as at the critically important referral hearing that precedes it. It concluded that violation of that right is not per se reversible error, and that the showing of ineffectiveness was not sufficient.)

If her right to counsel was statutory and not constitutional, the trial court's error in relieving appellant's attorney and allowing the case to go forward without appointing another attorney, must be reviewed under article VI, section 13 of the California Constitution: the error is not reversible unless it is shown to be prejudicial. The circumstances of this case make it clear that the trial court would have made the order it did whether or not appellant's attorney had remained in that capacity through the hearing. The trial court was amply justified in deciding that the adoption alternative was in the best interests of the child—the standard to be applied at a section 366.26 hearing. Indeed, the showing was so strong that it seems compelling even if the harmless beyond a reasonable doubt standard were applied. It is only if the error is per se reversible that appellant can prevail. It was not that kind of error.

Further, there is no question, but that a reversal in this case will cause additional delay, and that the delay carries the potential for harm to the children. The sole purpose of the section 366.26 hearing was to select and implement a permanent plan; the hearing would not have resulted in a return to parental custody under any circumstances. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 304 [19 Cal.Rptr.2d 544, 851 P.2d 826].) The most mother could have hoped for was an order which might have left open the possibility of a future petition to modify the permanent plan upon a showing of changed circumstances. (§ 388.) This hope was brought to the court's attention by a report which stated: "[M]other continues to be employed full time, is now relocated to a 4 bedroom house, and feels she is capable of having minors returned. Minors' mother desires to have another ICPC evaluation of her home." While this position may have been more emphatically urged by

counsel, it is unlikely to have affected the outcome in light of the fact that the two older minors wanted to be adopted by their foster parents.

To conclude that the error is harmless under these circumstances does no violence to constitutional principles. On the contrary, such a conclusion effectuates the most basic principle of appellate review, i.e., that we reverse only where there has been a miscarriage of justice. Therefore, we conclude no prejudicial deprivation of counsel has been demonstrated.

## IV*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

## V

We add a final comment about the length of time this case has taken to get to this point. When the dependency petition was filed, the age range of the children was one and one-half months to four and one-half years. It is now six years to ten and one-half years. The case was in the trial court for three and three-fourths years. It took an additional two years for the case to be briefed, notwithstanding its entitlement to priority. (Cal. Rules of Court, rule 39(e).) By now, over six years have passed since proceedings were initiated. We do not attempt to assess why the system of adjudication has taken so long to reach a final decision in this case. It is sufficient to observe that, for everyone's sake, we must do better.

For the foregoing reasons, the judgment is affirmed.

Woods (A. M.), P. J., and Hastings, J., concurred.

A petiton for a rehearing was denied September 2, 1994, and the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied October 20, 1994. Kennard, J., was of the opinion that the petition should be granted.

---

*See footnote, *ante*, page 541.