113 Cal.Rptr.2d 659 (2001)
93 Cal.App.4th 1074
In re ANGEL W., a Person Coming Under the Juvenile Court Law.
Sacramento County Department of Health and Human Services, Plaintiff and Respondent,
v.
Levetus B., Defendant and Appellant.
Nos. C037895, C037896.
Court of Appeal, Third District.
November 16, 2001.
Review Denied January 29, 2002.
*662 John L. Dodd, under appointment by the Court of Appeal, Tustin, for Defendant and Appellant.
Robert A. Ryan, Jr., County Counsel, and John Soika, Deputy County Counsel, for Plaintiff and Respondent.
Certified for Partial Publication.[*]
MORRISON, J.
In these consolidated appeals, Levetus B., mother of the minor, Angel W., appeals from orders of the juvenile court denying her petition for modification and terminating her parental rights. (Welt & Inst. Code, §§ 388, 366.26 [further undesignated statutory references are to this code].) In the published part of this opinion, we find the court erred in denying appellant's request to represent herself, but that such error was harmless. In the unpublished portions of this opinion, we reject appellant's remaining claims of error. We affirm the orders of the juvenile court.

FACTS
The Sacramento County Department of Health and Human Services (DHHS) removed the two-year-old minor from appellant's custody in September 1998 based upon allegations of neglect, domestic violence and substance abuse. The court adjudged the minor a dependent child and ordered reunification services, including a psychological evaluation. The evaluation concluded appellant tended to project blame for her problems on others, was unlikely to profit from parenting classes, and would probably have difficulty with independent parenting. Appellant participated in services, completed various programs and consistently visited the minor. During visits, appellant was appropriate and the minor seemed to be happy but did not initiate interaction with appellant and was somewhat reserved. The social worker was concerned about appellant's parenting skills and referred her to the intensive Lekotek parenting program. Although visitation interaction was appropriate, the social worker observed that the minor did not seem to be strongly attached to appellant. After several sessions with appellant and the minor, the Lekotek provider also expressed her belief that there was a lack of a bond between appellant and the minor despite appellant's positive interaction with the minor. According to the Lekotek provider, the minor's response to appellant ranged from eager interaction to anxiety.
Appellant made enough progress in her reunification plan to begin unsupervised and overnight visitation in November 1999 but, by February 2000, she had relapsed into substance abuse. At the permanency review hearing, the court terminated services, decreased visitation and set a section 366.26 hearing. Prior to the hearing, appellant requested that the court appoint substitute counsel and, after a hearing, the court granted the request.
The assessment for the section 366.26 hearing stated appellant had visited the minor consistently twice a week until visitation was suspended and then reduced after appellant's relapse. The reports from the visitation supervisor indicated that in the June 2000 visit, the minor did not want to have anything to do with appellant and would not show affection, respond to appellant's directions or interact with her. The July 2000 visit was calmer but the minor still did not readily move toward, interact with, or show affection to appellant. At the August 2000 visit, the minor was not affectionate at all and did not respond to appellant's babying her.
The section 366.26 hearing was continued for several months while DHHS sought a prospective adoptive home for the minor. During this time, appellant filed a petition for modification requesting additional *663 reunification services, citing as changed circumstances that she was participating in drug testing, attending Alcoholics Anonymous, had stable housing and continued to visit the minor regularly. Appellant alleged no facts to show the proposed change was in the minor's best interests. At the hearing on the petition, the court found the petition did state a change of circumstances based upon appellant's participation in some services on her own, but it was not in the minor's best interests to reinstate reunification.
In February 2001, DHHS filed an addendum to the assessment for the section 366.26 hearing which stated that a prospective adoptive placement had been found and that the minor began visits in the new home in January 2001. The social worker reiterated his previous conclusion the minor was likely to be adopted and recommended termination of parental rights. The social worker believed, based upon observation of visits between appellant and the minor, that the minor was not attached or bonded to appellant since the minor seemed disinterested in visiting with the mother.
At the section 366.26 hearing, appellant again requested substitute counsel, asserting her current counsel failed to return telephone calls, had misrepresented the facts of the case to her and had failed to make arguments appellant considered important. At the court's request, counsel responded to the allegations explaining her tactical choices in representing appellant and addressing the alleged misrepresentations and lack of communication. The court found appellant had not demonstrated either a breakdown in the attorney-client relationship and communications to the extent that new counsel was required or that counsel's handling of the case showed bad faith or incompetence.
Appellant then sought unsuccessfully to represent herself. Proceeding with counsel, appellant testified about her visitation and contact with the minor. Focusing upon the most recent visit of February 2001, appellant testified the minor recognized her and appeared happy to see her. In describing the visit, appellant testified: "The visit went well. She [the minor] was very happy to see me. She cried `Momma, Momma, I love you.' The visit went very well. She did notshe told me that she didn't want to leave me." The minor's counsel interposed a hearsay objection at this point, which the court sustained. Appellant did not challenge the ruling. The court terminated parental rights and ordered the minor placed for adoption.

DISCUSSION

I-IV[**]

V
After appellant was unsuccessful in moving for substitute counsel, she asked to represent herself.[2] The court attempted *664 to explain that it had to find her competent to do so and began to explain the pending hearing but appellant continually interrupted the court and became increasingly upset. Concluding it could not take a waiver of the right to counsel given appellant's current emotional state, the court called a brief recess in the proceedings. When proceedings resumed, the court did not make any further attempt to inquire of appellant and stated: "And the Court is determining that based on [appellant's] previous inability in these proceedings to focus on the questions necessary to an inquiry on the issue of self[-]representation in order to give appropriate responses and also because demonstrated earlier on the record through her prior conduct that it *665 would be a disruption of the court proceedings for her to proceed in pro per, and we would not be able to conduct a meaningful trial, so I'm going to leave Parent Advocates as counsel for the mother."
Appellant contends the court erred in denying her request to represent herself. She relies upon the United States Supreme Court decision in Faretta v. California (1975) 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562, for the proposition that, because she was competent, she had the right to represent herself. Appellant observes that no California case has held Faretta does not apply in dependency proceedings and notes the court in In re Brian R. (1991) 2 Cal.App.4th 904, at page 921, 3 Cal.Rptr.2d 768 assumed the Faretta rule did apply to these proceedings.
In Faretta, the Supreme Court held a criminal defendant not only has the right to the assistance of counsel, but also "has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so." [Faretta v. California, supra, 422 U.S. 806, 807, 95 S.Ct. 2525, 2527, 45 L.Ed.2d 562, 566.) The decision in Faretta was based on three inter-related arguments: the history of the right of self-representation since the founding of the United States, the structure of the Sixth Amendment, and respect for the individual. (Martinez v. Court of App. of Cal. (2000) 528 U.S. 152, 156, 120 S.Ct. 684, 688, 145 L.Ed.2d 597, 603.) In Martinez, the Supreme Court applied this reasoning to determine whether there was a right to self-representation on appeal of a criminal case and concluded there was not. (Id. at p. 154, 120 S.Ct. at p. 687, 145 L.Ed.2d at pp. 602-603.)
The Sixth Amendment does not apply in dependency proceedings so its structure cannot provide a basis for finding a correlative constitutional right of self-representation. Unlike the bright line rule where the loss of liberty is involved, the constitutional right to counsel in civil cases is evolving. (In re Andrew S. (1994) 27 Cal.App.4th 541, 548, 32 Cal.Rptr.2d 670.) In Lassiter v. Department of Social Services (1981) 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640, the Supreme Court held due process may require the appointment of counsel in a proceeding to terminate parental rights; the determination is to be made on a case-by-case basis, applying the factors from Mathews v. Eldridge (1976) 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18.
"The dispositive question, which must now be addressed, is whether the three [Eldridge ] factors, when weighed against the presumption that there is no right to appointed counsel in the absence of at least a potential deprivation of physical liberty, suffice to rebut that presumption and thus to lead to the conclusion that the Due Process Clause requires the appointment of counsel when a State seeks to terminate an indigent's parental status. To summarize the above discussion of the [Eldridge ] factors: the parent's interest is an extremely important one (and may be supplemented by the dangers of criminal liability inherent in some termination proceedings); the State shares with the parent an interest in a correct decision, has a relatively weak pecuniary interest, and in some but not all cases, has a possibly stronger interest in informal procedures; and the complexity of the proceeding, and the incapacity of the uncounseled parent could be, but would not always be, great enough to make the risk of an erroneous deprivation of the parent's rights insupportably high.
"If, in a given case, the parent's interests were at their strongest, the State's interests were at their weakest, and the risks of error were at their peak, it could not be said that the [Eldridge ] factors did not overcome the presumption against the *666 right to appointed counsel, and that due process did not therefore require the appointment of counsel. But since the [Eldridge] factors will not always be so distributed, and since `due process is not so rigid as to require that the significant interests in informality, flexibility and economy must always be sacrificed,' [citation], neither can we say that the Constitution requires the appointment of counsel in every parental termination proceeding. We therefore adopt the standard found appropriate in Gagnon v. Scarpelli [(1973) 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656], and leave the decision whether due process calls for the appointment of counsel for indigent parents in termination proceedings to be answered in the first instance by the trial court, subject, of course, to appellate review. [Citation.]" (Lassiter, supra, 452 U.S. at pp. 31-32, 101 S.Ct. 2153.)
"In post-Lassiter dependency cases in California, it appears settled that whether a due process right to counsel existed at the lower court hearing depends on whether the presence of counsel would have made a `determinative difference' in the outcome of the proceeding. [Citation.]" (In re Ronald R. (1995) 37 Cal.App.4th 1186, 1196, 44 Cal.Rptr.2d 22.) More specifically, the constitutional right to counsel has been held not to attach at a section 366.26 hearing. (In re Andrew S. (1994) 27 Cal.App.4th 541, 548-549, 32 Cal. Rptr.2d 670.) "By the time the 366.26 hearing is held it already has been determined that the parent will not have custody of the child, and the issue to be decided is whether to allow the child to be adopted. Certainly the mother has a stake in that decision, and it is proper that she have counsel at the hearing at which the issue will be decided. But in light of the standards announced by the United States Supreme Court and applied by our Supreme Court, we cannot say the appellant had a constitutional right to appointed counsel at the proceeding. [Citation.]" (Ibid.)
Since there is no federal constitutional right to counsel from which a right to self-representation can be derived, we look to the other two bases of the Faretta decision. In Martinez, the Supreme Court found the historical evidence insufficient to support a constitutional right to self-representation on appeal in a criminal case. "The historical evidence relied upon by Faretta as identifying a right of selfrepresentation is not always useful because it pertained to times when lawyers were scarce, often mistrusted, and not readily available to the average person accused of crime. For one who could not obtain a lawyer, self-representation was the only feasible alternative to asserting no defense at all. Thus, a government's recognition of an indigent defendant's right to represent himself was comparable to bestowing upon the homeless beggar a `right' to take shelter in the sewers of Paris." (Martinez, supra, 528 U.S. at pp. 156-157, 120 S.Ct. at p. 688, 145 L.Ed.2d at pp. 603-604.) The indigent parent facing a loss of parental rights faces no such stark alternatives, as he or she has an indisputable statutory right to counsel.
Finally, the Martinez court found the respect for individual autonomy as a basis for a right of self-representation must be grounded in the Due Process Clause where the Sixth Amendment did not apply. (Martinez, supra, 528 U.S. at p. 160, 120 S.Ct. at p. 690, 145 L.Ed.2d at p. 606.) "Under the practices that prevail in the Nation today, however, we are entirely unpersuaded that the risk of either disloyalty or suspicion of disloyalty is a sufficient concern to conclude that a constitutional right of self-representation is a necessary component of a fair appellate proceeding." (Ibid.) This same reasoning applies to defeat a constitutional right to *667 self-representation in a dependency proceeding.
Nor can a constitutional right to self-representation be grounded on the California Constitution. In People v. Sharp (1972) 7 Cal.3d 448, at pages 457-459, 103 Cal.Rptr. 233, 499 P.2d 489, our Supreme Court held there was no right to self-representation under the state constitution.
That there is no constitutional right of self-representation in a dependency proceeding does not necessarily mean there is no such right. In In re Justin L. (1987) 188 Cal.App.3d 1068, 233 Cal.Rptr. 632, this court concluded there is a statutory right to self-representation in a proceeding to terminate parental rights, and error in denying this right should be analyzed under ordinary principles of harmless error as set forth in People v. Watson (1956) 46 Cal.2d 818, 837, 299 P.2d 243. As we explain, we adhere to that holding.
In Justin L., an attorney had been appointed to represent the mother in a proceeding to terminate her parental rights under former Civil Code section 232. (In re Justin L., supra, 188 Cal.App.3d at p. 1071, 233 Cal.Rptr. 632.) At the start of trial, the mother filed a document entitled "Discharge of Attorney and Substitution of Party in Propria Persona." The court denied the request to discharge counsel, telling the mother she was "stuck with him." (Id. at p. 1072, and fn. 1, 233 Cal.Rptr. 632.) We found no constitutional right to waive counsel, but that such right had been granted by statute. At that time Civil Code section 273.5, subdivision (b) provided for the appointment of counsel "unless such representation is knowingly and intelligently waived." (In re Justin L., supra, at p. 1073, fn. 2, 233 Cal.Rptr. 632 [original italics].) We found the error in depriving the mother of her statutory right to waive counsel was subject to the ordinary principles of harmless error and was harmless. (Id. at pp. 1077-1078, 233 Cal.Rptr. 632.)
The current provisions for the appointment of counsel in dependency cases (codified in the Welf. & Inst.Code) are are similar to those considered in Justin L., supra, 188 Cal.App.3d 1068, 233 Cal.Rptr. 632. Section 317 provides, in part: "(a) When it appears to the court that a parent ... of the child desires counsel but is presently financially unable to afford and cannot for that reason employ counsel, the court may appoint counsel as provided in this section. [¶] (b) When it appears to the court that a parent ... of the child is presently financially unable to afford and cannot for that reason employ counsel, and the child has been placed in out-of-home care, or the petitioning agency is recommending that the child be placed in out-of-home care, the court shall appoint counsel, unless the court finds that the parent ... has made a knowing and intelligent waiver of counsel as provided in this section. [¶] ... [¶] (d) The counsel appointed by the court shall represent the parent, guardian, or child at the detention hearing and at all subsequent proceedings before the juvenile court. Counsel shall continue to represent the parent or child unless relieved by the court upon the substitution of other counsel or for cause. The representation shall include representing the parent or the child in termination proceedings and in those proceedings relating to the institution or setting aside of a legal guardianship." (See also Cal. Rules of Court, rule 1412(h)(1).)
Section 317, subdivision (b) gives the parent the right to waive counsel in the circumstance where appointment of counsel is mandatory. Indeed, the court is not "obliged to appoint counsel" absent "some manifestation by the indigent parent that *668 he or she wants representation." (In re Ebony W. (1996) 47 Cal.App.4th 1643, 1647, 55 Cal.Rptr.2d 337.) This limitation on the court's duty to appoint counsel is implicit recognition that the primary right of the parent is self-representation.[3]
We do not read subdivision (d), which assures vertical representation throughout the dependency proceedings, to defeat the parent's right to waive counsel. A parent may waive counsel at any point. (See, e.g., In re Jamie R. (2001) 90 Cal.App.4th 766, 771-772, 109 Cal.Rptr.2d 123 [mother waived right to counsel at in camera hearing where she remained silent after counsel's stipulation to permit court to interview children without counsel present].) Section 317 has been construed to permit relieving counsel from appointment once the parents no longer desire counsel. (Janet O. v. Superior Court (1996) 42 Cal.App.4th 1058, 1064, 50 Cal.Rptr.2d 57.) "To construe the section's language as prohibiting the court from relieving counsel where, as here, the evidence indicates the parents no longer desire representation, would scuttle the purpose of the statute which is to provide counsel only to those parents who desire representation and are financially unable to afford counsel." (Ibid.)
When the child has been removed from the home and appointment of counsel is mandatory for an indigent parent absent a knowing and intelligent waiver, more is required than simply accepting that the parent no longer desires counsel and ascertaining the parent is not using the request to proceed pro se to intentionally obstruct the proceedings. Certainly, to comply with section 317, subdivision (b), the court must take a waiver of the right to counsel. There is no requirement, however, that the court engage in a full Faretto-type admonition and inquiry, although similar admonitions have occurred in civil cases. (See Nelson v. Gaunt (1981) 125 Cal.App.3d 623, 637, 178 Cal.Rptr. 167.) Further, the court must respect the right of the parent to represent him or her self as a matter of individual autonomy and avoid forcing the mentally competent parent to proceed with appointed counsel in the guise of protecting a person who is unskilled in the law and courtroom procedure. (See Faretta v. California, supra, 422 U.S. at p. 834, 95 S.Ct. at pp. 2540-2541, 45 L.Ed.2d at p. 581; Godinez v. Moron (1993) 509 U.S. 389, 399-400, 113 S.Ct. 2680, 2686-2687, 125 L.Ed.2d 321, 332-333.) The right to counsel should not be used to "`imprison a man in his privileges.' " (Martinez v. Court of App. of Cal, supra, 528 U.S. at p. 165, 120 S.Ct. at p. 693 (cone. opn. of Scalia, J.).)
Here, the court attempted to take a waiver of appellant's right to counsel, but appellant was too upset initially to respond appropriately. Nothing in the exchange between the court and appellant, however, indicated she lacked basic competency either to give a waiver of counsel or to represent herself. On returning from the recess, when it appeared that appellant had regained some composure, the court should have made a second attempt to take a waiver of her right to counsel. Instead, the court's comments suggest the court did not recognize appellant had the right to proceed pro se and was instead basing its decision on concerns she might disrupt the courtroom proceedings. The concern is a valid one and litigants do not have the right to intentionally disrupt or delay the proceedings. (See Faretta v. California, *669 supra, 422 U.S. at p. 834, fn. 46, 95 S.Ct. at p. 2541, fn. 46, 45 L.Ed.2d at p. 581.) The possibility of disruption or delay, however, exists to some degree with virtually all pro se litigants and the mere possibility alone is not a sufficient ground to deny self-representation. Only when the pro se litigant "is and will remain" so disruptive as to significantly delay the proceedings or render them meaningless and negatively impact the rights of the minor in a prompt and fair hearing may the court exercise its discretion to deny self-representation. (See People v. Welch (1999) 20 Cal.4th 701, 735, 85 Cal.Rptr.2d 203, 976 P.2d 754.)
The record in this case does not support a conclusion that appellant's conduct had reached this disruptive level. By her own unrefuted statement, she had been coming to court for two years and had never engaged in an outburst before. While her initial exchange with the court was emotional and somewhat uncontrolled, she did recognize her conduct was inappropriate and apologized to the court. There is no indication that upon resuming the proceedings appellant was anything but respectful and cooperative. Accordingly, on this record we cannot conclude the court properly denied appellant the right to represent herself.
Since the right of self-representation in a dependency proceeding is statutory rather than constitutional, denial of the right is analyzed under the ordinary principles of harmless error. (People v. Sharp, supra, 7 Cal.3d at pp. 461-63, 103 Cal.Rptr. 233, 499 P.2d 489; In re Justin L., supra, 188 Cal.App.3d at p. 1077, 233 Cal.Rptr. 632.) On a review of the entire record, it does not appear reasonably probable that a result more favorable to appellant would have been reached had she represented herself. (People v. Watson, supra, 46 Cal.2d 818, 837, 299 P.2d 243.) Appellant was able to present her case to the court through her testimony. It is not reasonably probable that by representing herself appellant would be able to counter the evidence that the minor had not formed a substantial emotional bond or attachment with her or that adoption was in the minor's best interest.

DISPOSITION
The judgment is affirmed.
We concur: SCOTLAND, P.J. and HULL, J.
NOTES
[*] Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I, II, III and IV of the Discussion.
[**] See footnote *, ante.
[2] The following colloquy occurred:

"THE COURT: Thank you. Yes, Miss B[ ]?
"[APPELLANT]: I can represent myself if youI will represent myself.
"THE COURT: Well, before the Court could have you represent yourself in these proceedings, we have to go over some ground rules before I can determine if that would be an appropriate otherwise or wise or prudent thing to do. [¶] The court will have to find that there is a knowing and intelligent waiver of your right to counsel, and since this particular hearing is probably the most important hearing that there is in a dependency court, I'm really going to need to be satisfied that you are competent to represent yourself.
"[APPELLANT]: I'm very competent of representing myself.
"THE COURT: But the Court is going to have to be satisfied of that fact before I can permit you to do that. [¶] The purpose of today's hearing is to select a permanent plan for Angel. That permanent plan could be based on the recommendation of the Department of Health and Human Services!,] to terminate parental rights for you with the child placed for adoption. That permanent plan could be guardianship with parental rights remaining intact. That permanent plan also could be long-term placement with parental rights
"[APPELLANT]: Excuse me. Do you think that that is what I want out of this, Your Honor?
"THE COURT: First thing I need to do before I can permit you
"[APPELLANT]: I understand that.
"THE COURT:to represent yourself is determine whether or not you can pay attention to the Court when it's giving directives. Your outbursts do not assist you in that regard.
"[APPELLANT]: Well, I have a right to have an outburst, Your Honor, because
"THE COURT: No. No. No, you do not.
"[APPELLANT]: Oh, I do not? I have no rights at all, I have no feelings for my child?
"THE COURT: My point isthat is not what I said. I said you are not to have outbursts. There is no way that I'm going to allow you to represent yourself in these proceedings. You need to be able to ascertain what is going on
"[APPELLANT]: I have. I have.
"THE COURT:and understand that the ramifications of your conduct is important to this particular hearing.
"[APPELLANT]: It should have never got this far. That is why I have a right to an outburst at this particular hearing.
"THE COURT: No, you do not.
"[APPELLANT]: This particular hearing is very important, but it shouldn't have got this far. I deserve a second chance with my daughter. I'm pleading right now.
"THE COURT: The other thing that you need to understandJust a second. The other thing that you need to understand is the issue today is notthe issue today is not whether or not whether or not Angel goes home with you but whether your parental rights are terminated today.
"[APPELLANT]: Well, IwellwellThat is not the issue? If that is not the issuewell, if that is not the issue, then I can't relate. Then I can't. If that is not the issue because I don't deserve this to happen to me. I don't know one to just step [into] my life and take my child and say it's okay to take her. You don't know me from diddly squat.
"THE COURT: Just a second, ma'am. First thing we need to have perfectly clear perfectly clearJust a moment.
"[APPELLANT]: I'm very emotional and upset, Your Honor.
"THE COURT: That doesn't mean I'm going to let you continue to make outbursts in this courtroom.
"[APPELLANT]: I apologize, your Honor, but this is the first time that I have ever made an outburst in your courtroom. 1 have been coming here for two years, Your Honor.
"THE COURT: All right. I understand.
"[APPELLANT]: I apologize]
"THE COURT: Thank you. The court will accept your apology. The concern that 1 have, [counsel for appellant], is not whether or not Parent Advocates of Sacramento should continue to represent the mother orI already made a determination in that regard. But I do have serious concern as to whether or not as we sit here today that the mother is fully cognizant of the ramifications of this particular trial, whether or not she is able to competently participate in this particular trial, and that would be the only basis upon which I would have some reservation about going forward today. So we need to get that portion straight. [¶] I certainly cannot make a determination that it would be appropriate for the mother to be representing herself. I don't think that I could take a knowing an [sic] intelligent waiver from her at this time given her current emotional state in these proceedings."
[3] Unlike the state statutes, the federal statutes explicitly provide for the right of self-representation. (28 U.S.C. § 1654.)