BAKER, J., Concurring
I concur in the result, and in what I understand to be the core of the majority's holding: The juvenile court's considered decision to deprive C.P. (Mother) of counsel to prepare and argue her Welfare and Institutions Code section 388 petition-the culmination of a two-year deprivation of counsel-was wrong and demands remediation. I write separately to highlight two points regarding the unique impact that a deprivation of the right to appointed counsel can have (and had here) on the fairness of dependency proceedings.
I
The majority cites In re Kristin H. (1996) 46 Cal.App.4th 1635, 54 Cal.Rptr.2d 722 for the proposition that "[t]he harmless error standard has long applied to an appellate court's review of the denial of a parent's statutory right to counsel." I have my doubts that In re Kristin H. is a reliable guide in this case-in that case, unlike this one, the mother was not deprived of counsel; instead, her claim was that her appointed attorney provided ineffective assistance. ( In re Kristin H. , supra , at pp. 1658, 1667-1668, 54 Cal.Rptr.2d 722.) But regardless, the majority holds the error here is of both statutory and constitutional (due process) dimension, whereas *437 the courts *803 in In re Kristin H. and the other deprivation of counsel cases the majority cites were concerned only with a violation of the statutory right to counsel.[12] (See, e.g., In re Malcolm D. (1996) 42 Cal.App.4th 904, 914, 50 Cal.Rptr.2d 148 ; In re Ronald R. (1995) 37 Cal.App.4th 1186, 1197, 44 Cal.Rptr.2d 22 ; In re Andrew S. (1994) 27 Cal.App.4th 541, 546-547, 549, 32 Cal.Rptr.2d 670 ; In re Nalani C. (1988) 199 Cal.App.3d 1017, 1026, 245 Cal.Rptr. 264 ; see also In re Justin L. (1987) 188 Cal.App.3d 1068, 1077, 233 Cal.Rptr. 632 [no issue of a wrongful deprivation of counsel; error asserted was that the juvenile court improperly denied parent self-representation].)
I agree there can be cases at the margins where the consequences of error are so apparent as to permit a fairly reliable counterfactual assessment whether harm results from the wrongful absence of appointed counsel. If an unrepresented parent, for instance, files a Welfare and Institutions Code section 388 petition to argue the Third Amendment to the United States Constitution requires a juvenile court to terminate jurisdiction over a dependent child, appointment of even Clarence Darrow would not make a difference. The majority also makes a fair argument that this is a case at the opposite margin, one where the pernicious consequences of the absence of appointed counsel are so obvious as to permit a conclusion that the juvenile court's error must have resulted in prejudice.
But I believe there is a grey area between the margins where the difference appointed counsel might have made during a dependency proceeding will be more difficult to reliably assess. (See Gonzalez-Lopez , supra , 548 U.S. at p. 150, 126 S.Ct. 2557 [erroneous deprivation of counsel has " 'consequences that are necessarily unquantifiable and indeterminate' " and "[h]armless-error analysis in such a context would be a speculative inquiry into what might have occurred in an alternate universe"]; cf. In re James F. (2008) 42 Cal.4th 901, 914-915, 70 Cal.Rptr.3d 358, 174 P.3d 180 [concluding an "error in the procedure used to appoint a guardian ad litem for a parent in a dependency proceeding .... does not necessarily require 'a speculative inquiry into what might *804 have occurred in an alternate universe' "], emphasis added.)[13] Indeed, the majority opinion tends to bear this out, as it cannot avoid fairly speculative language to describe *438 the consequences of even the clear error in this case: appointed counsel "could have kept the hearing focused," "would have a better ability" to make arguments, and "would ... be better equipped" to communicate with the parties.
Our Supreme Court has said we should not import the structural error doctrine "wholesale, or unthinkingly" into the dependency context. ( In re James F. , supra , 42 Cal.4th at pp. 915-916, 70 Cal.Rptr.3d 358, 174 P.3d 180.) That is right, and I do not advocate for a wholesale importation of the doctrine. But for cases in which there is an egregious deprivation of the foundational right to counsel, we should do more thinking. When a counterfactual inquiry appears too difficult to responsibly undertake, or a counterfactual conclusion relies on inferences that really amount to guesswork, the bias should be in favor of reversal.
II
The majority's directions on remand are to immediately appoint counsel for mother, to permit appointed counsel to file a new Welfare and Institutions Code section 388 petition, and to vacate certain additional court orders as they relate to mother's visitation and family reunification plans. These are all appropriate directions, and I agree with them. I am compelled to add a few words, however, regarding the juvenile court's task on remand to account for the possibility that the error in failing to appoint counsel in connection with Mother's Welfare and Institutions Code section 388 petition may have infected subsequent dependency proceedings.
The new petition that today's decision permits Mother to file can appropriately address both the facts as they existed at the time the uncounseled petition was heard in December 2016, as well as any intervening developments since that time that bear on Mother's visitation with J.P. and his best interests. If it is the case, for instance, that Mother's attorney believes the juvenile court's failure to grant her unmonitored visitation at the December 2016 hearing contributed to subsequent developments that may have been unfavorable to Mother, that is an issue counsel may appropriately raise. And if such an issue is raised, the juvenile court would greatly facilitate further appellate review, if any, by making the following findings on the record after considering the newly-filed petition: (1) what visitation order the court would have made on the facts as they existed in December 2016; (2) the reasons for *805 the visitation order the court makes considering current conditions; and (3) to the extent these two findings differ, an explanation of the reasons for the difference, including any impact the prior deprivation of counsel may have had on subsequent developments.

Constitutional errors in dependency proceedings are generally amenable to review for harmlessness. But the Court of Appeal cases the majority cites for that proposition are not deprivation of counsel cases, and the high court has more than once drawn a distinction between constitutional errors generally, and constitutional error that results from a deprivation of counsel. (United States v. Gonzalez-Lopez (2006) 548 U.S. 140, 150, 126 S.Ct. 2557, 165 L.Ed.2d 409 (Gonzalez-Lopez ); Custis v. United States (1994) 511 U.S. 485, 496, 114 S.Ct. 1732, 128 L.Ed.2d 517 ; Arizona v. Fulminante (1991) 499 U.S. 279, 306-308, 111 S.Ct. 1246, 113 L.Ed.2d 302 ; Chapman v. California (1967) 386 U.S. 18, 23, 87 S.Ct. 824, 17 L.Ed.2d 705 ; see also In re Angela C. (2002) 99 Cal.App.4th 389, 395, 120 Cal.Rptr.2d 922 ; In re Amy M. (1991) 232 Cal.App.3d 849, 867-868, 283 Cal.Rptr. 788.) And while it is true that the dependency context differs from the criminal context, that truism does nothing to grapple with the difference that remains, even in the dependency arena, between constitutional errors that involve a total or prolonged absence of appointed counsel, and constitutional errors that do not.

The parent in In re James F. was represented by counsel throughout the proceedings. (In re James F., supra, 42 Cal.4th at pp. 906-910, 70 Cal.Rptr.3d 358, 174 P.3d 180.) The error asserted on appeal was that the juvenile court appointed a guardian ad litem for the parent without advising the parent of the purpose or consequences of the appointment. (Id. at p. 910, 70 Cal.Rptr.3d 358, 174 P.3d 180.)