Filed 5/17/24  In re I.B. CA4/3

### NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| In re I.B., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> K.B., <br><br> Defendant and Appellant. | G063327 <br><br> (Super. Ct. No. 23DP0949) <br><br> O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Julie Anne Swain, Judge.  Affirmed.

Leslie A. Barry, under appointment by the Court of Appeal, for Defendant and Appellant.

Leon J. Page, County Counsel, Karen L. Christensen and Aurelio Torre, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for the minor children.

\*          \*          \*

The Orange County Social Services Agency (Agency) filed a dependency petition seeking to have 13-year-old A.B. and four-year-old I.B. made dependents of the court. The children's mother, K.B. (Mother), was represented by court-appointed counsel but, during the disposition hearing, moved to be allowed to represent herself. The juvenile court denied the motion and Mother appealed the ruling and the subsequent disposition order. Although we find the denial to be error, it is harmless error, and the subsequent disposition order is affirmed.

FACTS

On August 31, 2023, Mother called law enforcement for assistance with her 13-year-old daughter, A.B. When police responded, they found Mother, A.B., and I.B., mother's four-year-old son, at a park. Mother informed the police that she, A.B., and I.B. had moved from Utah to Southern California about a month earlier. The family did not have any housing and was sleeping in motels when they could afford it, and when they could not afford a motel, in hospital lobbies. She said she did not know where they would stay that night. Mother reported she had received public assistance but did not have any money for food for the next two days.

When questioned apart from Mother, A.B. stated she and Mother had an argument earlier in the evening during which Mother called A.B. "fat and ugly," threw a cup of water at A.B.'s face, and kicked A.B. twice. A.B. was seated on the ground during the exchange. A.B. threatened to run away and Mother told her to leave and to "leave quicker." A.B. stood up and ran down the street. A.B. walked several blocks before changing her mind and returning to the park. A.B. articulated she did not feel safe with Mother because Mother hit her. The officer noted A.B. smelled strongly of sweat and

2

body odor and appeared not to have showered or had her clothes washed for several days. Her hair was messy and unbrushed.

I.B. was also wearing dirty clothes and had unbrushed hair. He was not yet toilet trained and had urinated and defecated in his pants. According to A.B., they had run out of pull-ups for I.B. two days earlier. I.B. was limping from a significant cut on his foot.

In response to questions from the police officer, Mother denied A.B.'s allegations of abuse. She admitted throwing the cup of water but denied she had thrown it at A.B. She also admitted telling A.B. to leave but said it was a mistake. Mother asked the police to take A.B. somewhere safe for the night.

Mother was arrested for willful cruelty to a child and failure to provide. A.B. and I.B. were taken into protective custody and a report was made to the Agency, which ultimately learned A.B.'s father had passed away and I.B.'s father could not be located.

The Agency interviewed A.B. and I.B. A.B. reported they had not washed their clothes in about two weeks because they did not have money to pay for washing. She said she is sometimes left alone to care for I.B., including at least once overnight. She stated Mother began hitting her when she was five. According to A.B., Mother hits A.B. with her hands on different parts of her body and kicks her in the stomach, sometimes leaving bruises or marks. The last time A.B. could recall having such bruises or marks was about three months earlier, when Mother hit A.B. with a cord. A.B. disclosed she had previously stayed at a youth shelter when she was 11. A.B. was supposed to be in online school but did not have the necessary computer equipment, so she had not started the school year. A.B. informed the interviewer that Mother pinches I.B. and spanks him on his buttocks. Other than nodding his head to confirm that he was four years old, I.B. was not responsive to any questions posed by Agency personnel during the initial interview.

When interviewed by the Agency, Mother expressed she could not care for A.B. due to certain behaviors and asked that A.B. not be returned to her care. She requested I.B. be returned to her care so they could return to Utah.

The Agency determined the allegations of general neglect and physical abuse to A.B. and I.B. and emotional abuse and caretaker absence to A.B. were substantiated. The Agency concluded there was substantial danger to the children's physical or emotional health and no reasonable means to protect the children's physical or emotional health without removing them from Mother's care.

On September 5, 2023, the Agency filed a juvenile dependency petition seeking to have A.B. and I.B. made dependent children of the court under Welfare and Institutions Code section 300, subdivisions (a), (b)(1), (c) [A.B. only], (g), and (j).[1]

An initial hearing was conducted on September 6, 2023. Counsel was appointed for Mother. Separate counsel was appointed for A.B. and I.B. After hearing argument, the juvenile court found that a prima facie showing had been made and ordered A.B. and I.B. detained.[2] A further hearing was set for September 28, 2023. The hearing date was later continued to October 12, 2023, to allow the Agency to coordinate with the social services agency in Utah, where the family had previously resided and where Mother's oldest child was currently in foster care. The Utah social services agency ceded jurisdiction to the California courts on October 12, and that same day, the California court continued the disposition hearing to October 19, 2023.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] Although both A.B. and I.B. were ordered detained and ultimately made dependents of the court, Mother appeals the disposition ruling only as to I.B. We therefore focus principally on the facts as they relate to I.B. Mother originally also appealed the jurisdiction order, but conceded in her reply brief that her arguments on appeal apply only to the disposition order.

After the detention hearing, the children were again interviewed. A.B.'s responses were consistent with her earlier reports. I.B. was slightly more forthcoming than he had been in the initial interview. I.B. tapped the top of his hand and tapped his buttocks when asked if Mother hit him. He also pinched the skin on the top of his own hand when asked if Mother pinched him. He indicated he did not want to go home with Mother. When asked if he felt happy or sad at home, I.B. answered "'sad.'" I.B. was then asked why he felt sad at home, and he responded by touching his nose with a flat hand. When asked if he is hit on the nose, I.B. tapped his nose several times, then put his hand to his chest, tapped his chest, and leaned backward as if he was falling into the chair sitting behind him. I.B. said he was happy in his current location.

Mother's oldest child, who was then 17 years old and in foster care in Utah, also was interviewed. He has been in foster care in Utah since around 2020. He was removed from Mother's care because she "'whooped'" him, and the beating was caught on video because the family was living in a shelter at the time. He reported when he was in Mother's care, he was physically disciplined almost every day. Mother hit him with her hands and feet and with objects such as a broom and wire.[3] He recalled Mother physically disciplining A.B. as well, but did not recall any physical discipline of I.B.

In an interview on September 12, 2023, Mother stated she was looking at a place to rent. When asked how she would afford the rent, she stated she would be signing a contract with the San Diego Wave soccer team. Mother also informed the interviewer she is a famous race car driver and would soon be signing a contract with a large Formula 1 car manufacturer. She indicated she was hoping to go to Indianapolis within the month to sign the contract. Mother also alleged the staff members caring for I.B. had contacted Mother through social media and one staff member made an inappropriate comment

---

[3] Mother reported she attended a parenting class after the oldest child went into foster care and had not used physical discipline with her children since then.

about her children. Mother showed the Agency representative a picture of what appeared to be an adult and asked if they thought it was a picture of I.B.

On September 20, 2023, Mother sent the Agency representative an email, complaining the Agency was attempting to contact the children's fathers in violation of an alleged instruction by the juvenile court not to contact the fathers. She explained she wanted I.B. returned to her but did not want A.B. returned to her. On October 16, 2023, Mother failed to show up for a scheduled drug test. Mother also failed to provide contact information other than email. In addition, the children's caregiver reported there had been issues with Mother engaging in erratic and unpredictable verbal aggression. Mother also violated her supervised visitation guidelines with I.B. when she told him she had a home ready for him and he would be going home with her soon.

At the hearing on October 19, 2023, the juvenile court continued the jurisdiction and disposition hearing to October 23, 2023. When the hearing resumed on October 23, 2023, the court unsuccessfully attempted to qualify I.B. as a witness and excused him without making any competency findings. Mother requested new counsel but the court denied the request after conducting a *Marsden* hearing.[4] The jurisdiction and disposition hearing was continued to October 24, 2023.

On October 24, 2023, Mother asked to be allowed to represent herself. The juvenile court advised Mother of her statutory right to appointed counsel and Mother waived that right. Mother stated she was ready to proceed and informed the court she had previously represented herself in a landlord-tenant dispute. Mother said she understood what a subpoena was and how to issue one, agreed she would not receive special treatment, admitted she did not know the rules of evidence but said she could

---

[4] *People v. Marsden* (1970) 2 Cal.3d 118. "'"[A] *Marsden* hearing is not a full-blown adversarial proceeding, but an informal hearing in which the court ascertains the nature of the defendant's allegations regarding the defects in counsel's representation and decides whether the allegations have sufficient substance to warrant counsel's replacement."'" (*People v. Orey* (2021) 63 Cal.App.5th 529, 568.)

research and learn them, and maintained she would be able to make objections even though she could not provide any specific examples of possible objections. She expressed she was willing to proceed even though she did not understand the rules of evidence, which she acknowledged could mean evidence might be admitted against her or she might not be able to successfully comply with the rules necessary to present evidence. Mother expressed her desire to call two visitation supervisors as witnesses, which would mean some delay. She explained she had asked her lawyer to subpoena the two witnesses, but the lawyer did not. Mother said she understood the court could terminate the self-representation if she disrupted the process and she would not be able to complain that her own representation had been ineffective. Mother repeatedly waived the right to appointed counsel and acknowledged she was giving up her right not to incriminate herself and that she understood the things she might say while speaking in court could be used against her. She was unable to name the document containing the allegations against her, explain what the state had to prove, or recite the applicable burden of proof. She acknowledged she must be on time for hearings and that if she failed to appear for a hearing, the matter could proceed without her. She agreed, if allowed to represent herself, she would have to communicate directly with the attorneys and social workers going forward.

After hearing concerns from county counsel and minor's counsel regarding delay, the juvenile court asked if Mother could proceed that day. Mother indicated she was not sure if she could proceed that day because she wanted to present testimony from the two visitation supervisors who had not yet been subpoenaed. The court then denied Mother's request to represent herself on the following grounds: (1) the request was untimely because it was made after a witness had testified; and (2) Mother

7

"equivocat[ed]" on whether she would be able to proceed on that day.[5]  The hearing was continued to October 26, 2023, to allow Mother time to file a petition for a writ.[6]

On October 26, 2023, the hearing was continued to November 1, 2023.  On November 1, 2023, the juvenile court heard additional testimony and continued the hearing to November 9, 2023.  On November 9, 2023, after hearing more testimony and admitting an addendum to the Agency report as evidence showing Mother had not made progress in her case plan, had not participated in drug testing, and continued to violate visitation guidelines by promising I.B. he would be returned to her care, the court found the following allegations true by a preponderance of the evidence:  (1) failure to protect (§ 300, subd. (b)(1)); (2) no provision for support (*id.*, subd. (g)); and (3) sibling abuse/neglect (*id.*, subd. (j)).  The court declared I.B. a dependent of the court, ordered him removed from parental custody pending the provision of family reunification services to Mother, and set a six-month review for May 8, 2024.[7]

## DISCUSSION

Mother appeals the juvenile court's denial of her motion to represent herself.  She asks that the denial and subsequent disposition order be reversed and the case remanded with directions to conduct a new disposition hearing with Mother representing herself.

"Section 317, subdivision (b) requires appointment of counsel for an indigent parent or guardian in a juvenile dependency case 'unless the court finds that the parent or guardian has made a knowing and intelligent waiver of counsel as provided in this section.'  A waiver of counsel is valid if the juvenile court has apprised the parent of

---

[5]  The court made no finding regarding Mother's mental competence.

[6]  Mother filed a writ petition (*K.B. v. Superior Court,* G063227), which was summarily denied by this court on October 27, 2023.

[7]  The court also declared A.B. a dependent of the court, but Mother does not appeal the order as to A.B.

the dangers and disadvantages of self-representation and the risks and complexities of his or her particular case.  [Citation.]  [¶]  Section 317, subdivision (b) has been interpreted to give a parent in a juvenile dependency case a statutory right to self-representation." (*In re A.M.* (2008) 164 Cal.App.4th 914, 923.)  "[T]he court must respect the right of the parent to represent him- or herself as a matter of individual autonomy and avoid forcing the mentally competent parent to proceed with appointed counsel in the guise of protecting a person who is unskilled in the law and courtroom procedure."  (*In re Angel W.* (2001) 93 Cal.App.4th 1074, 1084.)

The juvenile court denied Mother's motion on two grounds.  The first ground—the motion was untimely because it was made during the proceedings—does not support the denial.  "A parent may waive counsel at any point."  (*In re Angel W., supra,* 93 Cal.App.4th at p. 1083.)  The second ground—potential delay—also fails to support the denial of the motion.  "The possibility of . . . delay . . . exists to some degree with virtually all pro se litigants and the mere possibility alone is not a sufficient ground to deny self-representation."  (*Id.* at p. 1085.)

In considering Mother's request to represent herself, the juvenile court was required to "consider [the] effect on the child's right to a prompt resolution of the dependency proceedings."  (*In re A.M., supra,* 164 Cal.App.4th at p. 926.)  Pursuant to section 352, subdivision (b), unless there are "exceptional circumstances," the disposition hearing must be completed no later than 60 days after the child was ordered detained. (*Ibid.*)  Although the court did not specifically reference section 352, subdivision (b) during the hearing or in its order, on appeal the Agency suggests Mother's lack of familiarity with the legal process and desire to call additional witnesses might have interfered with the time limits under that section.  I.B. and A.B. were ordered detained on September 6, 2023.  Under section 352, subdivision (b), the 60-day deadline expired on November 6, 2023.  Mother's request to represent herself was considered and denied on October 24, 2023—nine days before the jurisdictional deadline.  The disposition hearing

9

was not concluded until November 9, 2023—three days after the deadline. There is no suggestion in the record that Mother's desire to subpoena two witnesses would have extended the conclusion of the hearing beyond November 9, 2023. The court erred in denying Mother the statutory right to self-representation.

Because the right to self-representation in a dependency proceeding is statutory rather than constitutional, it is evaluated under the harmless error standard. (*In re Angel W., supra,* 93 Cal.App.4th at p. 1082.) "The harmless error analysis is by definition a case-by-case analysis. Particularized analysis is critical." (*In re J.P.* (2017) 15 Cal.App.5th 789, 799.) An error is harmless "unless it is reasonably probable the result would have been more favorable to the appealing party but for the error." (*In re R.F.* (2021) 71 Cal.App.5th 459, 474.) Although the juvenile court erred in denying Mother's motion to represent herself, our review of the record shows it is not reasonably probable that a more favorable outcome would have resulted if Mother had been allowed to represent herself.

Mother was able to present her case through her own testimony. Mother's counsel appropriately advocated on her behalf. Following presentation of the evidence, the juvenile court determined, based on the evidence, that Mother had harmed I.B. and A.B. and continued to be a substantial risk to both children if they were to be returned to her care. The court determined A.B. suffered physical abuse and I.B. either suffered physical abuse or suffered emotional abuse as a result of seeing his older brother and sister physically abused. The court determined I.B. was not being properly cared for by Mother. The two additional witnesses Mother sought to add were intended to "explain what the situation is doing to [I.B.]." Such evidence could not overcome the court's findings related to the need to remove I.B. from Mother's care.

In sum, given the detailed evidence in the record, including the evidence provided by the Agency regarding severe deficiencies in Mother's care for A.B. and I.B.,

we conclude it is not reasonably probable the result would have been more favorable to Mother if she had been allowed to represent herself for the remainder of the hearing.

DISPOSITION

The order denying Mother's request to represent herself and the subsequent disposition order as to I.B. are affirmed.


GOODING, J.

WE CONCUR:


O'LEARY, P. J.


MOTOIKE, J.