Filed 12/4/20  Vaughn v. Darwish CA2/2
(unmodified opinion attached)

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JACK VAUGHN et al.,<br><br>  Plaintiffs and Appellants,<br><br>  v.<br><br>BARBARA DARWISH et al.,<br><br>  Defendants and Appellants. | B296693 (Consolidated with B305132)<br><br>(Los Angeles County Super. Ct. No. BC521721)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on November 12, 2020, be modified as follows:

1. On page 11, the last sentence of the first paragraph under section "B. Favorable termination," delete the following sentence and citation:

"Any doubts are resolved against the termination being on the merits.  (*Villa v. Cole* (1992) 4 Cal.App.4th 1327, 1335 (*Villa*).)"

2.  On page 11, the second paragraph, the first full sentence ending with "dismissal is presumed to be a favorable termination on the merits," modify the citation "*Villa, supra*, 4 Cal.App.4th at p. 1335" to read as follows:
      *Villa v. Cole* (1992) 4 Cal.App.4th 1327, 1335

3.  On page 22, delete footnote 11, which will require renumbering of all subsequent footnotes.

4.   On page 23, at the end of the first paragraph, following the last sentence commencing with "Because all six" and ending with "sufficiently close," the sentence is revised to read as follows:
      Because all six unlawful detainer actions involved identical facts, because all six tenants joined together in a single malicious prosecution action against the landlord defendants, and because Hart and Rodriguez had the same incentive to litigate this issue as the remaining tenants, the relationship between all of the tenants is "sufficiently close" and thus satisfies this element as well as the due process concerns that animate it. (Cf. *Grande v. Eisenhower Medical Center* (2020) 44 Cal.App.5th 1147, 1161-1163 [collateral estoppel does not apply to bar plaintiff's lawsuit against a hospital based on prior judgment against staffing

company when each entity is liable for its own conduct]; accord, *Golden State Seafood, Inc. v. Schloss* (2020) 53 Cal.App.5th 21, 37 [interim adverse judgment rule does not apply to a prior judgment arising out of "a different incident with different parties"].)

5. On page 24, top of the page, delete the word "four" in the sentence "The tenants offer four arguments to the contrary" and insert the word "five" so the sentence reads:

   The tenants offer five arguments to the contrary.

6. On page 24, the first sentence of the last paragraph at the bottom of the page beginning with "Second," and in between the words "identical" and "because," the sentence should be modified to read as follows:

   Second, the tenants suggest that the issues in all six unlawful detainer actions are *not* identical.  In their briefs, they argue that those actions were different because, in a June 2012 order made prior to the bellwether trial, a judge ruled that there were "insufficient common questions of law and fact *at this time* among the six" unlawful detainer actions to consolidate them.  (Italics added.)

7. On page 25, at the top of the page following the last sentence of the paragraph ending in "coming to a different view" insert the following:

3

For the first time at oral argument and in their petition for rehearing, the tenants argue that the facts underlying the unlawful detainer actions for each tenant were different. We reject this argument: It is wholly inconsistent with the tenants' repeated representations to the trial court in this case that the facts are all the "same" for each tenant and to *this* court that "the undisputed evidence . . . established that . . . the six [unlawful detainer] actions were all identical, except for the amount of rent demanded"; it is also wholly inconsistent with the reason for having a bellwether unlawful detainer trial in order to determine what to do with the remaining tenants.

8. On page 25, the first full paragraph beginning with the word "Third," after the third sentence beginning with "We are applying" and ending with "actions against Hart and Rodriguez," add as footnote 14 the following footnote, which will require renumbering of all subsequent footnotes:

[14] Because we are applying collateral estoppel to our prior ruling *in the malicious prosecution action*, the tenants' argument—raised for the first time in their petition for rehearing—that they had no ability to intervene *in the unlawful detainer actions against Hart and Rodriguez* is irrelevant. The right and ability to intervene can be relevant to whether parties are in privity for purposes of collateral estoppel (e.g., *Nein v. HostPro, Inc.* (2009) 174

4

Cal.App.4th 833, 845; *Rodgers v. Sargent Controls & Aerospace* (2006) 136 Cal.App.4th 82, 93 [same]; *Vega v. Jones, Day, Reavis & Pogue* (2004) 121 Cal.App.4th 282, 298-299 [same]), but the tenants have been parties to the malicious prosecution action all along.

9. On page 25, the last paragraph beginning with "Lastly, the tenants argue," delete the word "Lastly" and insert the word "Fourth," in its place.

10. On page 27, at the top of the page, the first full sentence beginning with "Lastly, the tenants assert," delete the word "Lastly" and insert the word "Fourth," in its place.

11. On page 27, after the paragraph ending in "and regularly—evaded" and before the next paragraph beginning with "In light of our analysis," insert the following as a new paragraph:

> Lastly, and for the first time in their petition for rehearing, the tenants assert that *their* malicious prosecution claims are different from Hart's and Rodriguez's claims because the landlord defendants lacked probable cause to *maintain* the unlawful detainer actions against the tenants for the three months between the date on which the unlawful detainer court ruled for Hart and Rodriguez in the bellwether trial and the date on which the landlord defendants voluntarily dismissed those actions

against the tenants. To be sure, "the tort of malicious prosecution *does* include continuing to prosecute a lawsuit discovered to lack probable cause." (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 966.) But the tenants did not plead this theory. Their complaint alleges that the landlord defendants' "commencement and continued prosecution" of the unlawful detainer actions damaged them and that the landlord defendants "refused to dismiss the remaining [unlawful detainer] cases" after the bellwether trial. Critically, however, the complaint nowhere draws any distinction between Hart and Rodriguez—and the remaining tenants—on this basis; instead, the complaint lumps all six tenants together. Whether or not this language is ambiguous enough to have allowed the tenants to have articulated this theory at some point early on in the litigation of this action, they chose not to do so for the seven-plus years the malicious prosecution action has been pending—either before the trial court, in their briefs filed in this court, or at oral argument. This theory was not articulated until the tenants' petition for rehearing. As such, we deem it waived. (*Reynolds v. Bement* (2005) 36 Cal.4th 1075, 1092 ["'arguments . . . cannot be raised for the first time in a petition for rehearing'"].)

*       *       *

6

There is no change in the judgment.

Appellants' petition for rehearing is denied.

_____

ASHMANN-GERST, Acting P. J.   CHAVEZ, J.   HOFFSTADT, J.

Filed 11/12/20  Vaughn v. Darwish CA2/2 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JACK VAUGHN et al.,<br><br>      Plaintiffs and Appellants,<br><br>      v.<br><br>BARBARA DARWISH et al.,<br><br>      Defendants and Appellants. | B296693 (Consolidated with B305132)<br><br>(Los Angeles County Super. Ct. No. BC521721) |

APPEALS from a judgment and post-judgment order of the Superior Court of Los Angeles County, Richard L. Fruin, Jr., Judge.  Affirmed.

Mesisca Riley & Kreitenberg, Dennis P. Riley and Rena E. Kreitenberg for Plaintiffs and Appellants.

Stillman & Associates and Philip H. Stillman for Defendants and Appellants.

\* \* \* \* \* \*

This is the latest chapter in a seemingly unending tome of litigation between a landlord and its now-former tenants. What started as a landlord-tenant dispute back in 2010 has in the ensuing decade spawned eight lawsuits,[1] seven appeals,[2] and five writ proceedings.[3] Throughout the course of this litigation, including the two consolidated appeals before us now, the parties and their attorneys have repeatedly misstated the facts and procedural history of this litigation, repeatedly misstated the law, repeatedly changed their positions on issues, and repeatedly sought to re-litigate previously decided issues.

These appeals arise out of the malicious prosecution chapter of the saga. Back in 2012, the landlord brought six separate unlawful detainer actions, one against each tenant living in a house. The unlawful detainer court tried two of the actions as bellwethers and ruled for the tenants; thereafter, the

---

[1] These lawsuits include (1-3) three rounds of unlawful detainer actions by the landlord; the tenants' civil lawsuits for (4) damages, (5) malicious prosecution, and (6) fraudulent transfer; and the landlord's civil actions for (7) fraudulent transfer, and (8) destruction of property.

[2] These appeals include (1) a 2015 appeal from the denial of the anti-SLAPP motion in this malicious prosecution lawsuit; (2) an appeal from the tenants' civil action for damages; (3) an appeal from the tenants' fraudulent transfer action; (4) an appeal from the landlord's fraudulent transfer action; (5) a 2017 appeal from the grant of judgment on the pleadings as to two tenants in this malicious prosecution lawsuit; (6) this appeal; and (7) an appeal in the landlord's fraudulent transfer action.

[3] These writ proceedings include B304993, B300230, B295510, B292830, and B259269.

landlord voluntarily dismissed the remaining four unlawful detainer actions. In 2013, all six tenants sued the landlord for malicious prosecution of the unlawful detainer actions. In 2016, the trial court ruled that the landlord was entitled to judgment on the pleadings as to the two bellwether tenants because the unlawful detainer court's denial of the tenants' midtrial motion for judgment under Code of Civil Procedure section 631.8[4] operated as a binding determination that the landlord had probable cause to bring its unlawful detainer action against those two bellwether tenants. We subsequently affirmed. (*Hart v. Darwish* (2017) 12 Cal.App.5th 218 (*Hart*).) In 2019, the trial court ruled that the landlord was entitled to judgment as to the remaining tenants, but did so on the ground that the landlord's voluntary dismissal of the unlawful detainer actions against those tenants did not constitute a "favorable termination" on the merits. Those tenants now appeal. We conclude that the trial court's "favorable termination" ruling is incorrect, but its ultimate ruling in the landlord's favor is correct because its prior finding of probable cause as to the two bellwether tenants necessarily applies as a matter of law to the remaining tenants. The landlord has also appealed the trial court's post-judgment order refusing to award contractual attorney fees, but we conclude that this ruling is correct.

We accordingly affirm.

---

[4] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

## FACTS AND PROCEDURAL BACKGROUND

## I.     Facts

### A.     *Acquisition of rental premises*

This entire saga revolves around a two-story, single-family house located on Hyperion Avenue in Los Angeles (the house). By 2010, six unrelated people—Jack Vaughn (Vaughn), Esmeralda Hernandez (Hernandez), Wayne Hart (Hart), Dennis Goldson (Goldson), Carlos Rodriguez (Rodriguez), and Ernest Johnson (Johnson) (collectively, tenants)—were living in the house.

In August 2010, the house was acquired at a foreclosure sale by a trust whose trustee was an entity controlled by Barbara Darwish (Barbara).[5]  Since then, title to the house has been held by Gingko Rose, Ltd., whose members include Barbara, her husband David Darwish (David), and another entity (Logerm, LLC) controlled by the Darwishes (collectively, the landlord).

### B.     *2012 unlawful detainer action*

#### 1.     *The three-day notice and pleadings*

On April 24, 2012, the landlord served the tenants with three-day notices to pay 10 months' worth of "delinquent rent" or to "quit [the] premises."

The next month, after the tenants did not pay this "delinquent rent," the landlord filed six separate unlawful detainer actions, one against each tenant.[6]  Except for differences

---

[5]     Because the Darwishes share the same surname, we will use their first names to avoid confusion.  We mean no disrespect.

[6]     This was the landlord's *third* round of unlawful detainers.  In the first round, the trial court entered judgment for the tenants after finding that the unlawful detainer was brought

4

in the tenants' names and the amounts of delinquent rent, all six unlawful detainer actions had "identical" pleadings and involved "identical" facts.

### 2. *The bellwether trial*

Rather than try all six unlawful detainer actions together, the parties agreed to try the actions against Hart and Rodriguez together as a bellwether trial.

After the landlord rested its case-in-chief, Hart and Rodriguez moved for judgment pursuant to section 631.8 on the grounds that (1) the house was not properly registered under the applicable rent control ordinance, (2) the three-day notices were defective because they overstated the amount of rent by (a) demanding 10 months of "delinquent rent" when the house had been properly registered for only one month and (b) not deducting the amounts paid by the tenants for utilities, and (3) the three-day notices were defective because they did not allege any specific breach of the rental agreements. After weighing the evidence, the trial court immediately denied the section 631.8 motion on the last ground and, at the conclusion of the trial, denied the motion on the remaining grounds.

Despite denying Hart's and Rodriguez's section 631.8 motion, the court ultimately ruled in their favor after finding that the landlord did not "carry its burden of proof on numerous required elements of proof." Specifically, the court concluded that (1) the three-day notices were "defective" because, by demanding 10 months' rent with no deduction of tenant payments of utilities,

---

prematurely. In the second round, the trial court entered judgment for the tenants after finding that the tenants had not improperly excluded the landlord from the premises to conduct repairs.

5

the notices "overstated" the amount of rent due, (2) the three-day notices wrongly demanded payment by cashier's check, postal money order or cash, and (3) the house was never properly registered under the applicable rent control ordinance and the landlord did not offer to pay Hart and Rodriguez relocation fees.

### 3. *Voluntary dismissal of remaining four unlawful detainer actions*

In December 2012, the landlord dismissed the unlawful detainer actions against the remaining four tenants. The dismissal came after the tenants' attorney repeatedly requested a dismissal and alternatively threatened to move for summary judgment based on the outcome of the bellwether trial. Although both the landlord and the landlord's attorney explained that they dismissed the remaining actions due to the belief that they would get "the same result" as in the identical bellwether trial, the landlord's attorney later testified to her legal opinion that the judgment in the bellwether trial rested on a "technical issue with the three-day notice being overstated."

## II. Procedural Background

### A. *Malicious prosecution complaint*

In September 2013, the tenants filed a malicious prosecution action against the landlord and against the landlord's attorney (collectively, the landlord defendants) for filing the 2012 unlawful detainer actions.

### B. *Judgment on the pleadings as to Hart and Rodriguez*

The landlord defendants moved for judgment on the pleadings, arguing that the trial court's denial of the tenants' section 631.8 motion in the bellwether trial amounted to a finding by that court that the landlord had probable cause to bring the unlawful detainer actions, which precluded liability for malicious

6

prosecution as a matter of law. (*Hart, supra*, 12 Cal.App.5th at p. 222.) The trial court granted the motion as to Hart and Rodriguez. (*Ibid.*) We affirmed, reasoning that the trial court's decision not to grant judgment under section 631.8 in the bellwether trial was a ruling "'on the merits'" and was not induced by ""'the knowing use of false and perjured testimony,'"" such that it constituted "conclusive" proof that the landlord had probable cause to file and prosecute the underlying unlawful detainer actions against Hart and Rodriguez. (*Id.* at pp. 225-227.)

### C. *Trial on remaining tenants*

Following remand from *Hart* and the death of Goldson, the remaining three tenants—Vaughn, Hernandez and Johnson—proceeded to trial on their malicious prosecution claim. Over those tenants' objections, the court bifurcated and held a bench trial on the issues of whether (1) the landlord had probable cause to file the 2012 unlawful detainer actions, and (2) the landlord's post-bellwether trial dismissal of the remaining unlawful detainer actions constituted a "favorable termination" on the merits.

After a three-day trial, the landlord defendants moved for judgment under section 631.8.[7] In a tentative and a final statement of decision issued after Vaughn, Hernandez and Johnson filed objections, the trial court granted the motion for judgment. The court reaffirmed its prior ruling denying summary judgment to the landlord defendants on the ground

---

[7] Although the landlord defendants filed a written withdrawal of their motion before the court issued a ruling, they effectively withdrew their withdrawal by not objecting to the court's subsequent grant of the motion.

7

that the landlord did not have probable cause to file and prosecute the 2012 unlawful detainer actions. In the court's view, the denial of the section 631.8 motion in the bellwether trial did not mean that the landlord had probable cause to file and prosecute the unlawful detainer actions against the tenants *other than* Hart and Rodriguez because the trial against those other tenants would "not necessarily be the same" because it "would be informed by what happened in the" bellwether trial. However, the court held that relief under section 631.8 was still warranted because the landlord's voluntary dismissal of its 2012 unlawful detainer actions against those tenants did not constitute a "favorable termination" of those actions "on the merits." Although the voluntary dismissals flowed from the unlawful detainer court's ruling for Hart and Rodriguez in the bellwether trial, the court reasoned, *that* ruling was based on "procedural or technical deficiencies in the [unlawful detainer] complaints rather than a substantive deficiency" "because the landlord" "could have corrected" those deficiencies by "prepar[ing] and serv[ing]" a new "[three]-day notice that did not overstate the amount of rent."

The trial court entered judgment for the landlord defendants on March 19, 2019.

### D. *Tenants' appeal*

On March 22, 2019, Vaughn, Hernandez and Johnson filed a timely notice of appeal.

### E. *The landlord's motion for attorney fees*

Following the entry of judgment, the landlord filed a motion seeking $465,238.75 in attorney fees based on an attorney fees clause in the tenants' leases with prior lessors. The trial court denied the motion. In particular, the court ruled that (1)

8

the landlord defendants were not entitled to fees against three of the tenants (namely, Goldson, Rodriguez and Johnson) because they did not produce those tenants' leases, thereby precluding an award of contract-based attorney fees, and (2) the landlord defendants were not entitled to fees against the remaining three tenants (Vaughn, Hernandez and Hart) because the malicious prosecution action was "not brought for any of the . . . purposes enumerated in the attorney's fees provision in [those tenants'] rental agreements."

### F. *The landlord's appeal*

The landlord filed a timely notice of appeal of the order denying its attorney fees motion.

### G. *Consolidation*

We subsequently consolidated the tenants' appeal and the landlord's appeal.

## DISCUSSION

## I. Tenants' Appeal

The three remaining tenants—Vaughn, Hernandez and Johnson—argue that the trial court erred in granting the landlord defendants' section 631.8 motion for judgment. They assert that the landlord's voluntary dismissal of its unlawful detainer actions against them was a favorable termination on the merits, and that the trial court erred in concluding otherwise. As explained below, we agree with the tenants on this point. However, also as explained below, we affirm the trial court's grant of the section 631.8 motion because the landlord had probable cause to file and prosecute its action against those tenants as a matter of law.

### A. *The relevant law, generally*

   1.    *Section 631.8 motions for judgment*

9

If, after the plaintiff in a civil case rests its case-in-chief, a trial court weighs the plaintiff's evidence and concludes that "the plaintiff [has] failed to sustain its burden of proof," the court "may"—under section 631.8—"make findings of fact" and "render a judgment" in favor of the defense.  (§ 631.8, subd. (a); *People ex rel. Dept. of Motor Vehicles v. Cars 4 Causes* (2006) 139 Cal.App.4th 1006, 1012 (*Cars 4 Causes*); *Pettus v. Cole* (1996) 49 Cal.App.4th 402, 424 (*Pettus*).)  It is entirely up to the court whether to exercise this power, as the court may always "decline to render any judgment until the close of all the evidence." (§ 631.8, subd. (a); *Erika K. v. Brett D.* (2008) 161 Cal.App.4th 1259, 1271 (*Erika K.*) [noting that a trial court has "absolute discretion to deny a section 631.8 motion"].)  When a court exercises this discretionary power, we independently review its legal rulings; we review its factual findings for substantial evidence, although when a trial court grants a section 631.8 motion at the close of a plaintiff's case, "the question . . . becomes whether the evidence compels a finding in favor of [the defendant] as a matter of law."  (*Pettus*, at pp. 424-425; *Cars 4 Causes*, at p. 1012; *Ericksson v. Nunnink* (2015) 233 Cal.App.4th 708, 732-733.)

2.    *Malicious prosecution*

A plaintiff seeking a claim for malicious prosecution based on the initiation of a prior lawsuit must prove that the prior lawsuit was (1) terminated in the malicious prosecution plaintiff's favor, (2) "brought without probable cause," and (3) "initiated with malice."  (*Parrish v. Latham & Watkins* (2017) 3 Cal.5th 767, 775 (*Parrish*); *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 871 (*Sheldon Appel*).)

**B.** *Favorable termination*

To establish the first, "favorable termination" element of a malicious prosecution claim, the malicious prosecution plaintiff must show *both* that (1) the prior lawsuit was terminated in her favor (*Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 342 (*Casa Herrera*)), *and* (2) the termination "reflect[s] . . . [the plaintiff's] innocence of the . . . wrongful conduct" "alleged" in that prior lawsuit (*Sycamore Ridge Apartments LLC v. Naumann* (2007) 157 Cal.App.4th 1385, 1399 (*Sycamore Ridge*); *Lackner v. LaCroix* (1979) 25 Cal.3d 747, 749 (*Lackner*)).  In other words, the termination must rest on a finding that the prior lawsuit """lack[ed] merit""" or otherwise """would not succeed""" (*Sycamore Ridge*, at p. 1399; *Lackner*, at p. 751; *Eells v. Rosenblum* (1995) 36 Cal.App.4th 1848, 1854 (*Eells*); *Sierra Club Foundation v. Graham* (1999) 72 Cal.App.4th 1135, 1149 (*Sierra Club*)), rather than on a "technical or procedural" "ground[]."  (*Lackner*, at p. 750; *Casa Herrera*, at pp. 342-343.)  The reason for this requirement is straightforward:  Only when the termination of the prior lawsuit is on the merits does it "reflect[] . . . the underlying defendant's innocence."  (*Eells*, at p. 1855.)  Any doubts are resolved against the termination being on the merits. (*Villa v. Cole* (1992) 4 Cal.App.4th 1327, 1335 (*Villa*).)

When the prior lawsuit against the malicious prosecution plaintiff is voluntarily dismissed, that dismissal is presumed to be a favorable termination on the merits.[8]  (*Gruber v. Gruber* (2020) 48 Cal.App.5th 529, 538 (*Gruber*); *Sycamore Ridge*, *supra*, 157 Cal.App.4th at pp. 1400-1401; *Villa*, *supra*, 4 Cal.App.4th at p. 1335 [noting that voluntary dismissal is "considered" a

---

8    The landlord defendants deny the existence of any such presumption, and in so doing, misstate the law.

11

favorable termination on the merits "[i]n most cases"].)  The presumption is grounded in the "'natural assumption that one does not simply abandon a meritorious action once instituted.'" (*Lackner*, *supra*, 25 Cal.3d at p. 751.)  But the presumption may be rebutted by a showing that the dismissal was for reasons other than the dim likelihood of success on the merits.  (*JSJ Limited Partnership v. Mehrban* (2012) 205 Cal.App.4th 1512, 1524 ["[t]he reasons for the dismissal of the action [may] be examined"].)  In assessing a party's reasons for voluntarily dismissing the prior lawsuit, the malicious prosecution court may examine not only the testimony of the dismissing party but also what is "reasonably suggested" by the circumstances of the dismissal (*Sycamore Ridge*, at p. 1400), including whether the dismissal came after adverse rulings against the dismissing party (*Contemporary Services Corp. v. Staff Pro, Inc.* (2007) 152 Cal.App.4th 1043, 1057).  Although the "element of favorable termination" is generally a legal question "for the court to decide" (*Sierra Club*, *supra*, 72 Cal.App.4th at p. 1149), a party's reasons for voluntarily dismissing a claim present "a question of fact" (*Fuentes v. Berry* (1995) 38 Cal.App.4th 1800, 1808).

In this case, the landlord's voluntary dismissal of the unlawful detainer actions against Vaughn, Hernandez and Johnson is presumptively a favorable termination on the merits.  What is more, the landlord defendants have not rebutted that presumption.  The voluntary dismissal came *after* the landlord lost the bellwether trial and after the remaining tenants threatened to move for summary judgment on the basis of the bellwether trial's result.  Indeed, both the landlord and the landlord's attorney admitted that the reason for the voluntary dismissal was their belief that the outcome of the bellwether trial

12

would lead to the "same result" and "same decision" in the remaining unlawful detainer actions. Consequently, there is no doubt that the voluntary dismissal of these actions was a reflection of their likely merit and, as such, constituted a favorable termination on the merits.

The trial court reached a contrary conclusion, but did so by relying on the wrong legal standard. As explained above, the court reasoned that the voluntary dismissal of the unlawful detainer actions against the non-bellwether tenants was "procedural" and "technical" (rather than "on the merits") because the trial court's judgment for the bellwether tenants rested on defects in the three-day notices that "could [be] corrected" by serving new three-day notices stating the correct amount of delinquent rent. Under this reasoning, we observe, any ruling that does not forever oust a claim from court would be "procedural" and "technical" (and thus never subject to a malicious prosecution claim).

We reject this reasoning for three reasons. First, it is contrary to longstanding authority holding that a party's ability to seek relief in a *new* proceeding does not mean that the *prior* proceeding was terminated for a "procedural" and "technical" reason. (*Sycamore Ridge*, *supra*, 157 Cal.App.4th at p. 1401 [a party's "option to file a new action . . . at the time she voluntarily dismissed her claims" does not prevent the prior dismissal from constituting a "favorable termination"]; *Jaffe v. Stone* (1941) 18 Cal.2d 146, 152 (*Jaffe*) [a party's ability to initiate a "new proceeding" does not mean that prior "proceeding is [not] finally terminated" on the merits], italics omitted; *Sierra Club*, *supra*, 72 Cal.App.4th at p. 1151 [prior proceeding may be favorably terminated on the merits even if it is "not . . . incapable of revival

13

or" does not "constitute a bar to further prosecution for the same offense"]; see generally *Hurgren v. Union Mut. Life Ins. Co.* (1904) 141 Cal. 585, 587 ["[t]he fact that . . . legal termination [of the prior lawsuit] would not be a bar to another civil suit . . . founded on the same alleged cause is no defense to the action for malicious prosecution"].)  This authority applies whenever the prior action was an "independent, separate adversarial" proceeding "having a procedural life of its own" (rather than being a "subsidiary or purely defensive proceeding") (*Sierra Club*, at p. 1152; *Camarena v. Sequoia Ins. Co.* (1987) 190 Cal.App.3d 1089, 1094), and the 2012 unlawful detainer actions are unquestionably "independent" of, and "separate" from, any subsequent unlawful detainer actions that the landlord might have elected to file.  Second, the trial court's reasoning, by looking to the "legal tenability" of the rejected claim in future lawsuits, is contrary to the authority holding that "'the legal tenability of the underlying action is not the standard by which to judge whether the action was terminated in [[the] plaintiff's] favor.'"  (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 686.)  Third, the trial court's reasoning, by treating the landlord's failure to follow the substantive rules for the three-day notices as "technical" and "procedural" as long as it could re-file a lawsuit that follows those rules, is contrary to the authority holding that termination of a prior lawsuit due to the prior plaintiff's deficient prosecution of that prior lawsuit is neither a "technical" nor "procedural" termination.  (*Lumpkin v. Friedman* (1982) 131 Cal.App.3d 450, 455.)

The landlord defendants offer two further justifications for affirming the trial court's conclusion that the voluntary dismissals were "technical" and "procedural."

First, the landlord defendants assert that a trial court's rejection of an unlawful detainer action due to defects with the three-day notice—and hence a party's subsequent decision to voluntarily dismiss unlawful detainer actions based on similarly defective notices for fear of the court's likely rejection of those actions—are "technical" and "procedural" *regardless* of whether those defects can be corrected in the future. We reject this assertion.

To begin, a three-day notice setting forth the correct amount of delinquent rent is a *substantive element* of an unlawful detainer action. (*Borsuk v. Appellate Division of Superior Court* (2015) 242 Cal.App.4th 607, 610, 612-614, 616-617 (*Borsuk*); *Kruger v. Reyes* (2014) 232 Cal.App.4th Supp. 10, 16; *Olivares v. Pineda* (2019) 40 Cal.App.5th 343, 354 (*Olivares*) ["landlord cannot recover in an unlawful detainer based on a three-day notice that seeks rent in excess of the amount due"]; *Levitz Furniture Co. v. Wingtip Communications* (2001) 86 Cal.App.4th 1035, 1038, 1040 [same]; *North 7th Street Associates v. Constante* (2016) 7 Cal.App.5th Supp. 1, 5 [same]; *Ernst Enters. v. Sun Valley Gasoline* (1983) 139 Cal.App.3d 355, 359 [same]; see § 1161, subd. (2) ["three day[] notice" must "stat[e] the amount [of rent] that is due"].) As such, a landlord's failure to prove this element is a failure of proof *on the merits*, rather than a jurisdictional defect or a defect in pleading that might be considered "procedural" or "technical." (*Borsuk*, at pp. 612-613 [service of a three-day notice is not "jurisdictional," and decisions to the contrary are incorrect]; but see *Delta Imps. v. Mun. Court* (1983) 146 Cal.App.3d 1033, 1037 [implying that service of three-day notice is jurisdictional because it may be remedied in a motion to quash]; see generally *Sycamore Ridge*, *supra*, 157

15

Cal.App.4th at p. 1400 [termination of prior lawsuit due to lack of "jurisdiction" is "technical" and "procedural"]; *Jaffe, supra,* 18 Cal.2d at pp. 150-151 [termination of prior lawsuit due to "defects in the complaint" is "technical" and "procedural"].)  This conclusion is reinforced by the historical distinction between "the elements of the action" and the "procedural prerequisites to asserting them."  (*Robbins v. Blecher* (1997) 52 Cal.App.4th 886, 895.)  Although, as the landlord defendants point out, the service of an accurate three-day notice is "procedural" in nature, this observation is unhelpful because an unlawful detainer action is *itself* a statute-based procedural device for facilitating the summary transfer of possession of property between persons who may or may not have a contract between them.  (E.g., *People v. Little* (1983) 143 Cal.App.3d Supp. 14, 18 ["The purpose of the unlawful detainer statutes is procedural"].)

Moreover, accepting the gist of this argument—namely, that the three-day notice and other elements of unlawful detainer actions are all "procedural protections against summary eviction"—would always preclude a finding that an unlawful detainer action is resolved in a tenant's favor "on the merits" and thus preclude all malicious prosecution actions against landlords.  That is *not* the law.  (*Oviedo v. Windsor Twelve Properties, LLC* (2012) 212 Cal.App.4th 97, 111 [entertaining malicious prosecution action based on a prior unlawful detainer action]; *Olivares, supra,* 40 Cal.App.5th at p. 347 [same].)  Nor should it be, as it would exempt any and all landlords from liability for maliciously prosecuting unlawful detainer actions.

Second, the landlord defendants contend that substantial evidence supports the trial court's finding that their reason for voluntarily dismissing the remaining four unlawful detainer

16

actions was "technical" and "procedural."  We reject this contention.  As an initial matter, and as discussed above, the trial court's finding rests upon an incorrect legal standard; as such, its finding is entitled to no weight.  Applying the correct legal standard, there is no evidence—let alone substantial evidence—to support a finding that the dismissal was based on anything other than the lack of likely success on the merits.  The landlord defendants point to their unlawful detainer lawyer's testimony at trial that the voluntary dismissals were "technical" and "procedural."  This testimony is nothing more than an expert opinion on a legal issue that is inadmissible and thus cannot constitute substantial evidence.  (*Downer v. Bramet* (1984) 152 Cal.App.3d 837, 841 ["an 'expert'" may not "testify to legal conclusions in the guise of expert opinion" and "[s]uch legal conclusions do not constitute substantial evidence"].)  What is more, that opinion was informed by an unpublished appellate decision that, as we discussed above, employed the wrong legal standard.  The landlord defendants also point to the absence of a "prevailing party" attorney fee award for the tenants in the bellwether trial judgment.  This is doubly irrelevant because (1) the landlord defendants have not included the trial court's attorney fees order, so we do not know the court's *reasons* for not awarding attorney fees and, more broadly, (2) the prior court's determination about whether the tenants were "prevailing parties" turns on a different standard (namely, whether the tenants obtained the "greater relief" (Civ. Code, § 1717, subd. (b)(1))) than the standard governing whether a voluntary dismissal is "technical" or "procedural" rather than "on the merits."

17

In light of our analysis, we have no occasion to reach the tenants' several alternative arguments for reversing the trial court's favorable termination finding—namely, that the court should not have resolved factual issues itself, erred in allowing the landlord's unlawful detainer lawyer to testify to an unpublished appellate decision, did not treat as dispositive the prior anti-SLAPP appellate ruling finding favorable termination on the merits, and did not allow the tenants to present rebuttal evidence.

\* \* \*

Our conclusion that the trial court erred in finding that the voluntary dismissals did not constitute "favorable terminations" on the merits is not the end of our analysis. As a general rule, we review a trial court's ultimate ruling—here, judgment in favor of the landlord defendants—not just its reasoning; this is why we generally affirm a ruling as long as it is valid on any ground. (*People v. Mickey* (1991) 54 Cal.3d 612, 655; *People v. Zamudio* (2008) 43 Cal.4th 327, 351, fn. 11.) And even where, as here, a trial court has the absolute discretion to refuse to enter judgment (*Erika K.*, *supra*, 161 Cal.App.4th at p. 1271), and has declined to enter judgment on an alternative ground, we may still affirm if remanding the case would serve no purpose because the "outcome of [such] a remand is a foregone conclusion" due to the plaintiff's inability to "establish" an entitlement to relief. (*Choate v. Celite Corp.* (2013) 215 Cal.App.4th 1460, 1468; *Ena North Beach, Inc. v. 524 Union Street* (2019) 43 Cal.App.5th 195, 215; *People ex rel. Dept. of Transportation v. McNamara* (2013) 218 Cal.App.4th 1200, 1209; *Stearman v. Centex Homes* (2000) 78 Cal.App.4th 611, 625; see generally §§ 43 [appellate court has power to "affirm, reverse, or modify any judgment . . . and . . . direct the

18

proper judgment . . . to be entered"], 906 [same].)  Because, as discussed below, the trial court is compelled as a matter of law to find that the landlord's unlawful detainer actions were supported by probable cause, the outcome of any remand is a foregone conclusion and we must affirm the judgment on this alternative ground.

### C.    *Probable cause*

To establish the second element of a malicious prosecution claim that the prior lawsuit was "brought without probable cause," the malicious prosecution plaintiff must show that no "reasonable attorney would have thought the [lawsuit to be legally and factually] tenable." (*Sheldon Appel*, *supra*, 47 Cal.3d at p. 886; *Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 817 (*Wilson*), superseded on other grounds by § 425.16, subd. (b)(3).)  "A prior action was not initiated without probable cause merely because it was ultimately found to lack merit; it was initiated without probable cause only if '*all* reasonable lawyers' would 'agree' that the suit, at the time of filing, was 'totally and completely without merit' [based on] . . . 'the facts known to the defendant' 'at the time the suit was filed.'" (*Gruber*, *supra*, 48 Cal.App.5th at p. 538, quoting *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 743, fn. 13, and *Sheldon Appel*, at p. 878.)  Although whether the facts known to the defendant constitute probable cause is a question of law for the court (*Wilson*, at p. 825), what those facts *were* is a factual question that is for the court only if they are undisputed (*Sheldon Appel*, at pp. 875, 877, 881).

In *Hart*, *supra*, 12 Cal.App.5th 218, we held that a trial court's denial of a section 631.8 motion in a prior lawsuit, by virtue of the interim adverse judgment rule, "conclusive[ly]"

19

establishes that the prior plaintiff had probable cause to bring that lawsuit, and thus forecloses malicious prosecution liability against the prior plaintiff. (*Id.* at pp. 221, 227; see generally *Parrish, supra*, 3 Cal.5th at pp. 776-777 [reaffirming validity of "interim adverse judgment rule"].)[9] As noted above, *Hart* grew out of this very case, but involved only the two malicious prosecution plaintiffs—Hart and Rodriguez—who were the unlawful detainer defendants in the bellwether trial in which the section 631.8 motion was denied. We now confront the question left unaddressed in *Hart*: Does the trial court's finding of probable cause as to Hart and Rodriguez apply with equal force to the remaining three unlawful detainer defendants?

The answer is yes, and that answer is compelled by the doctrine of collateral estoppel.[10] Under that doctrine, a ruling on

[9] We categorically reject the tenants' suggestion that *Hart* was wrongly decided; if anything, this suggestion is further proof of these parties' seeming intent to relitigate the same issues *ad infinitum*.

[10] Although the trial court's ruling finding that the landlord had probable cause to bring unlawful detainer actions against Hart and Rodriguez occurred in the course of the *same* malicious prosecution proceeding before us now (ostensibly making it appropriate to apply the law of the case doctrine because this is technically the same malicious prosecution case), we elect to rely instead on the doctrine of collateral estoppel. We do so because a malicious prosecution claim is by definition premised on what happened in earlier litigation and here, that earlier litigation consists of six separately filed unlawful detainer actions against six different tenants. In such an instance, each prior action has a different party and potentially different issues, and the more probing inquiry demanded by the collateral estoppel doctrine specifically requires us to account for those potential differences.

20

an issue in a prior proceeding can be deemed to be binding in the current proceeding if (1) "the issue sought to be precluded from relitigation [is] identical to that decided in [the] former proceeding," (2) the issue was "actually litigated in the former proceeding," (3) the issue was "necessarily decided in the former proceeding," (4) "the decision in the former proceeding [is] final and on the merits," and (5) "the party against whom preclusion is sought [is] the same as, or in privity with, the party to the former proceeding." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 (*Lucido*).)  Even if these five prerequisites are met, the decision whether a prior ruling should be given preclusive effect is entrusted to the trial court's discretion, and turns on whether doing so "would be fair to the parties and constitutes sound judicial policy" in light of the "public policies underlying collateral estoppel—[namely,] preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation." (*Id.* at p. 343; *Mooney v. Caspari* (2006) 138 Cal.App.4th 704, 717-718.)

Under the doctrine of collateral estoppel, the trial court's earlier finding that the landlord had probable cause to bring its unlawful detainer actions against Hart and Rodriguez applies with equal force to the other tenants.

All five prerequisites of the doctrine apply.  As to the first prerequisite, issues are "identical" if "'identical factual allegations'" are "at stake." (*Lucido, supra,* 51 Cal.3d at p. 342.)  Here, they are:  But for the tenants' names and the amount of monthly rent, the landlord filed identical complaints against all six tenants living in the same house and sought the same 10

21

months' worth of delinquent rent;[11] the tenants filed identical answers; and the parties have otherwise stipulated or conceded that the facts were identical.[12]  In declining to grant judgment based on a finding that the landlord defendants had probable cause, the trial court focused—not on the underlying facts—but rather on whether the *two trials* (that is, the bellwether trial and the subsequent trial) would be identical.  This was the wrong focus, not only under the doctrine of collateral estoppel, but also under the law of malicious prosecution, which turns on whether the prior lawsuit was *brought* with probable cause and not on whether the resulting trials would play out the same way.[13]  As to the second, third and fourth prerequisites, there is no question that the issue of probable cause was actually and necessarily litigated "on the merits" by Hart and Rodriguez before the trial

---

11     For the first time at oral argument, the tenants' attorney argued that the facts regarding each tenant were different.  We reject this argument as wholly inconsistent with the tenants' repeated representations to the trial court in this case that "the facts are all the same" for each tenant, as well as the whole reason for having a bellwether unlawful detainer trial to determine what to do with the remaining tenants.

12     These items are properly before this court.  (Evid. Code, §§ 452, subd. (c), 459.)  Contrary to what the tenants assert, whether these items were also formally admitted into evidence at the malicious prosecution trial is of no consequence.

13     What is more, this erroneous focus is unsupported by the evidence at trial:  The landlord's attorney testified that had the remaining four unlawful detainer actions gone to trial, the landlord would have put on the "[e]xact same" evidence as the landlord did in the bellwether trial.

court entered judgment on the pleadings, and that the case was litigated to final judgment as to them.[14]  As to the fifth prerequisite, the parties are not the same because Vaughn, Hernandez and Johnson were not part of the Hart and Rodriguez judgment on the pleadings, but they are in privity with one another.  Privity is a flexible concept that asks whether the "'relationship between the party to be estopped and the unsuccessful party in the prior litigation . . . is "sufficiently close" so as to justify application of the doctrine of collateral estoppel.' [Citations.]" (*People v. Sims* (1982) 32 Cal.3d 468, 486-487, superseded by statute on other grounds as stated in *In re Kocontes* (2016) 244 Cal.App.4th 1229, 1246.)  Because all six unlawful detainer actions involved identical facts, because all six tenants joined together in a single malicious prosecution action against the landlord defendants, and because Hart and Rodriguez had the same incentive to litigate this issue as the remaining tenants, the relationship between all of the tenants is "sufficiently close."

Precluding re-litigation of the issue of probable cause is also mandated here as a matter of discretion.  That is because applying the probable cause-based judgment as to Hart and Rodriguez to the other tenants is "fair," promotes judicial economy by avoiding re-litigation of a thoroughly litigated issue, and protects the parties—and, frankly, the courts—from seemingly endless attempts to litigate, re-litigate, and re-re-

---

14      As a result, the tenants' argument—raised for the first time at oral argument—that collateral estoppel cannot apply to a "procedural" ruling (that is, one not on the merits) is not only waived, but is also irrelevant.

23

litigate the same issues over and over again. Conversely, not applying collateral estoppel here would disserve all of these goals.

The tenants offer four arguments to the contrary.

First, the tenants argue that the landlord defendants cannot rely on the doctrine of collateral estoppel because they raised that issue in their summary judgment motion, lost on that issue, and did not file a protective cross-appeal. Although a litigant's failure to file a cross-appeal precludes that litigant from seeking relief beyond that at issue in the main appeal (e.g., *Mason v. Lake Dolores Group* (2004) 117 Cal.App.4th 822, 831-832), the landlord defendants are not asking us to overturn the trial court's summary judgment ruling. Instead, we are being asked to decide whether the trial court correctly granted the landlord defendants' section 631.8 motion, which in turn presents the question whether the court's prior finding of probable cause to prosecute the unlawful detainer actions against Hart and Rodriguez applies to the unlawful detainer actions against the other tenants because the issues in *all* of those actions are identical. This question is properly before us as part of the tenants' appeal; whether it was also part of the landlord defendants' summary judgment motion is therefore irrelevant.

Second, the tenants suggest that the issues in all six unlawful detainer actions are *not* identical because, in a June 2012 order made prior to the bellwether trial, a judge ruled that there were "insufficient common questions of law and fact *at this time* among the six" unlawful detainer actions to consolidate them. (Italics added.) This suggestion is not well taken. A month after this ruling, the trial court consolidated Hart's and Rodriguez's cases in order to conduct the bellwether trial, and the parties now either stipulate or concede that the issues in all six

24

unlawful detainer actions are identical.  We accordingly reject the tenants' suggestion that the explicitly provisional view of the trial court regarding the similarity of issues made early on in the unlawful detainer proceedings thereafter precludes the trial court, this court, or the parties themselves from coming to a different view.

Third, the tenants assert that the interim adverse *judgment* rule cannot be applied to them because the landlord defendants did not take them to trial in the unlawful detainer actions, let alone obtain a *judgment*.  We need not determine whether this assertion is true because it is ultimately beside the point.  We are applying the doctrine of collateral estoppel to the trial court's prior finding in *Hart* that the landlord defendants had probable cause to bring the unlawful detainer actions against Hart and Rodriguez.  The context in which that finding was made—that is, as the basis for applying the interim adverse judgment rule to Hart and Rodriguez—does not alter that finding or preclude its application to the question of whether the landlord defendants had probable cause to bring the unlawful detainer actions against the other tenants at issue here.

Lastly, the tenants argue that, if the doctrine of collateral estoppel is relevant, it should apply—not to the trial court's judgment on the pleadings as to Hart and Rodriguez—but rather to the trial court's earlier findings, when denying the landlord defendants' anti-SLAPP motions (§ 425.16 et seq.), that the tenants had made a prima facie showing of favorable termination and lack of probable cause.  Although the trial court made such a finding and we affirmed it on appeal (*Vaughn v. Darwish* (May 27, 2015, B253694) 2015 Cal.App. Unpub. LEXIS 3665, at *12-*18 [nonpub. opn.]), our Legislature has declared that such

25

determinations made in the course of anti-SLAPP litigation have no collateral estoppel effect and, indeed, are "not [even] admissible in evidence at any later stage of the case, or in any subsequent action."  (§ 425.16, subd. (b)(3).)

The tenants both ignore this statutory bar, and simultaneously offer four arguments to circumvent it.  None of them has merit.  First, they cite language from cases reciting that "'law of the case may apply'" to "denial of an anti-SLAPP motion" (*Dickinson v. Cosby* (2019) 37 Cal.App.5th 1138, 1153; *Hotels Nevada, LLC v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 356), but each of these cases draws this language from a case that pre-dates section 425.16, subdivision (b)(3).  This attempt to mislead fails.  Second, the tenants argue that this statute cannot override the doctrine of collateral estoppel or, for that matter, law of the case.  Again, they are wrong.  (*California Logistics, Inc. v. State of California* (2008) 161 Cal.App.4th 242, 250 ["the Legislature may limit application of the doctrine [of collateral estoppel] for public policy purposes"]; *Renee J. v. Superior Court* (2002) 96 Cal.App.4th 1450, 1455 [statute may "provide[] an exception to the doctrine of law of the case"].)  Third, the tenants suggest that section 425.16, subdivision (b)(3)'s bar only applies when the prior anti-SLAPP ruling is used "to establish liability," and thus does not apply where, as here, a party (here, the tenants) is using the prior anti-SLAPP ruling "defensively."  This suggestion ignores the plain text of the statute (which declares any prior anti-SLAPP ruling "[in]admissible in evidence" regardless of the purpose for which it is offered) (§ 425.16, subd. (b)(3)), and ignores that the tenants' success in beating back the adverse section 631.8 ruling at issue here ultimately assists them in establishing the landlord defendants' liability for malicious

26

prosecution. Lastly, the tenants assert that section 425.16, subdivision (b)(3)'s bar to the application of collateral estoppel can, at most, apply to trial courts and not appellate courts. If accepted, this argument would mean that collateral estoppel would not initially apply to a trial court's anti-SLAPP findings but *would* apply once those findings are appealed, which is likely to be often given that our Legislature specifically created a right to immediately appeal such rulings (§ 425.16, subd. (i)). We sincerely doubt the Legislature enacted a bar to collateral estoppel that could be so easily—and regularly—evaded.

*     *     *

In light of our analysis, we have no occasion to reach the landlord defendants' alternative argument for reversal—namely, that one of the tenants' civil lawsuits awarded relief duplicative of the relief sought in the malicious prosecution action.

## II.    The Landlord's Appeal

The landlord argues that the trial court erred in denying its post-judgment motion for attorney fees under the three written leases it actually produced—that is, the leases for Vaughn, Hernandez and Hart.[15]

California follows the so-called "American rule" when it comes to attorney fees:  Parties in civil litigation bear their own unless a statute or contract provides otherwise. (§ 1021; *Eden Township Healthcare Dist. v. Eden Medical Center* (2013) 220 Cal.App.4th 418, 425.) If the parties to a contract agree to shift liability for attorney fees, our task is to give effect to their contract. (*Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154

---

**15**    To the extent it matters, the landlord does not argue that the trial court erred in not awarding fees as to the three tenants for whom it produced no written lease.

Cal.App.4th 547, 577.)  Although we generally review a trial court's denial of contract-based attorney fees for an abuse of discretion (*Walker v. Ticor Title Co. of California* (2012) 204 Cal.App.4th 363, 370), we independently review its interpretation of that contract where, as here, there is no extrinsic evidence to consider (*Windsor Pacific LLC v. Samwood Co., Inc.* (2013) 213 Cal.App.4th 263, 273, overruled on other grounds as stated in *Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 756).

The trial court did not abuse its discretion in denying the landlord's motion for attorney fees because the attorney fees clauses in the three leases—all of which are identical—do not provide for the award of attorney fees when the landlord prevails in a malicious prosecution action brought in response to an earlier unlawful detainer action.  Those clauses provide that a "prevailing party" is entitled to his "costs," including "reasonable attorney's fees," only "in an action brought" (1) "for the recovery of rent or other moneys due or to become due under this lease," (2) "by reason of a breach of any covenant herein contained," (3) "for the recovery of the possession of said premises," (4) "to compel the performance of anything agreed to be done herein," (5) "to recover for damages to said property," or (6) "to enjoin any act contrary to the provisions hereof."  The tenants' malicious prosecution action is not an "action brought" to achieve any of these six categories of relief; as such, the attorney fees clause in these leases is, by its own terms, inapplicable.

Seeking to avoid the narrow language of these clauses, the landlord (1) cites several cases where attorney fees were awarded; (2) argues more generally that attorney fees clauses can reach tort claims as well as contract claims, can reach

28

intertwined claims, and can reach implied covenants; and (3) asserts that the tenants are judicially estopped from contesting the award of attorney fees because two of the tenants (Vaughn and Hernandez) were awarded fees under those clauses in the very first round of unlawful detainer litigation. These arguments lack merit. The cases the landlord cites all involve far broader attorney fees clauses. (E.g., *Chinn v. KMR Property Management* (2008) 166 Cal.App.4th 175, 183, overruled on other grounds as stated in *DeSaulles v. Community Hospital of Monterey Peninsula* (2016) 62 Cal.4th 1140; *Lockton v. O'Rourke* (2010) 184 Cal.App.4th 1051, 1075-1076; *Allstate Ins. Co. v. Loo* (1996) 46 Cal.App.4th 1794, 1799.) It does not matter whether *other* attorney fees clauses can reach tort claims, intertwined claims, or implied covenants because the clauses *in this case* do not. What is more, the fact that the unlawful detainer actions were the singularity from which this universe of litigation has exploded does not render all subsequent litigation subject to the attorney fees clauses in the leases when that litigation is outside the plain language of those clauses. And the prior award of attorney fees in the first round of unlawful detainer litigation has no estoppel effect: The award in that first round fell squarely within the clause's scope because an unlawful detainer case is an action brought to recover rent or possession of the premises, while the malicious prosecution action, as noted above, falls outside the clause's scope.

* * *

In light of our analysis, we have no occasion to reach the tenants' alternative arguments in favor of affirming the trial court's attorney fees ruling.

29

## DISPOSITION

The judgment for the landlord defendants and post-judgment order denying the landlord's attorney fees are both affirmed.  The parties are to bear their own costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT

We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.
CHAVEZ

30