Filed 5/24/21  In re J.C. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re J.C. et al., Persons Coming Under the Juvenile Court Law. | |
| | E076259 |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | (Super.Ct.Nos. J278856 & J278857 & J278858 & J278859 & J278860)) |
| Plaintiff and Respondent, | |
| v. | |
| J.K. et al. | |
| Defendants and Appellants. | |
| _____ | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E076491 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J278856 & J278857 & J278858 & J278859 & J278860)) |
| v. | |
| C.C. et al. | OPINION |
| Defendants and Appellants. | |

1

CONSOLIDATED APPEALS from the Superior Court of San Bernardino County. Erin K. Alexander, Judge. Case No. E076259 affirmed with directions; case No. E076491 dismissed as moot.

Christopher Blake, under appointment by the Court of Appeal, for Defendant and Appellant J.K.

Marisa D. Conroy, under appointment by the Court of Appeal, for Defendant and Appellant C.C.

Michelle D. Blakemore, County Counsel, Glenn C. Moret, Deputy County Counsel for Plaintiff and Respondent.

This opinion addresses two appellate cases, and there are two appellants in each case—C.C. (Father) and J.K. (Mother) (case Nos. E076259 & E076491). On December 10, 2020, the juvenile court denied Father's and Mother's requests to represent themselves in their children's juvenile dependency proceedings. The appeal in case No. E076259 (the first case) followed. In the first case, Father asserts the juvenile court applied an incorrect legal standard when denying his request for self-representation. Mother contends the juvenile court erred in applying the law related to self-representation, and that there is an Indian Child Welfare Act (ICWA) error. Father and Mother (collectively, Parents) join in one another's arguments. We affirm with directions.

On February 2, 2021, at a pretrial settlement conference, the juvenile court denied various ex parte requests made by Parents. The appeal in case No. E076491 (the second case) followed. In the second case, Father asserts the record in the second case

supports his argument that the juvenile court erred in the first case. Also in the second case, Mother contends the record does not support a finding that she withdrew her request to represent herself, and that the record reflects she is able to represent herself. We dismiss the second case as moot.

## FACTUAL AND PROCEDURAL HISTORY

### A.      DETENTION THROUGH SIX-MONTH REVIEW

Parents began dating in 2008 and married in 2012. Parents share five children: (1) J.C., who is male and was born in February 2010; (2) J.W.C., who is male and born in March 2011; (3) J.C.1, who is male and was born in March 2012; (4) L.C., who is female and was born in April 2014; and (5) J.M.C., who is male and was born in April 2015.

The five children were removed from Parents' physical custody on November 29, 2018. "[T]he family was found living in a U-Haul truck. . . . [T]he truck was filthy, had bottles containing old urine, urine and fecal matter on the floor, soiled linens and clothing, and trash around the area." Mother suffered from untreated mental health issues. J.C.1 and J.M.C. were placed in one foster home. The other three children were placed in a second foster home.

The detention hearing took place on December 4, 2018. The jurisdiction hearing occurred on December 26, 2018. The disposition hearing took place on January 23, 2019. The sixth month review hearing occurred on August 9, 2019.

3

B.    TWELVE-MONTH REVIEW

On December 6, 2019, the San Bernardino County Department of Children and Family Services (the Department) recommended reunification services be terminated, that adoption be the permanent plan for J.C.1 and J.M.C., and that legal guardianship be the permanent plan for the other three children.  On December 9, 2019, Parents requested a contested 12-month review hearing, which was set for January 24, 2020.  On January 16, 2020, Valerie Ross filed a notice indicating Father had retained her to represent him in the case.  At the 12-month review hearing, the juvenile court ordered the Department to continue providing reunification services to Parents.

C.    OCTOBER 18-MONTH HEARING

On October 4, 2020, J.W.C. disclosed that he was being molested by J.C.  At the 18-month hearing, on October 20, the juvenile court said minors' counsel may have a conflict of interest.  The court continued the matter to December 10 so minors' counsel could determine if minors' counsel had a conflict.

Also at the October 20th hearing, Father's attorney, Ms. Ross, said that Father intended to represent himself and "challenge the jurisdiction of the Court.  He feels that the proper court is the District Court in Riverside."  Father was not present at the hearing.  The juvenile court said that if Father were present, then the court would assess Father to determine whether to grant his request for self-representation.  Since Father was not present, the court said, "I'll note if he wants to make a change in counsel he needs to do so, so that he's prepared for the next date.  [¶]  I won't entertain the change

4

in counsel at the next date, so he would need to set a special hearing or have counsel substitute in and be ready to go for the next hearing."

D. REQUEST TO CHANGE COURT ORDER

On November 6, 2020, Father filed a request to change a court order. (Welf & Inst. Code, § 388.[1]) Father sought to have the juvenile court's jurisdiction terminated. Father wrote, "I am not a U.S. Citizen, but I am a State National, as described in USC 8 § 1101 (a) 21 with limited diplomatic immunity as one who created government as per Geneva Conventions. . . . [¶] 'A "citizen of the United States" is a civilly dead entity operating as a co-trustee and co-beneficiary of the PCT (public Charitable Trust), the constructive, Cestui Que Vie trust of US Inc. Under the 14th Amendment, which upholds the debt of the USA and US INC." Father asserted that the fictional entity of the State of California cannot "bring its jurisdiction against the man."

Also on November 6, Father filed what he characterized as a "Living Testimony in [the] form of an Affidavit." In that document, Father explained that he is a "peaceful diplomatic ambassador to a lost world. 2 Corinthians 5:20." Father asserted, "I am a Citizen of Heaven and subject to God alone, I am also a sojourner on the land, and not a 14th AMENDMENT CITIZEN or any other type of FICTIONAL LEGAL ENTITY. Philippians 3:20."

Father stated, "I, [Father], Am a Man, commanded by Y-H-V-H, King and Creator of Heaven and Earth, to not settle matters in pagan secular courts.

---

[1] All subsequent statutory references will be to the Welfare and Institutions Code unless otherwise indicated.

5

1 Corinthians 6:1-9  1  How dare one of you with a complaint against another go to court before pagan judges and not before God's people?  2 Don't you know that God's people are going to judge the universe?  If you are going to judge the universe, are you incompetent to judge these minor matters?"

E.    DECEMBER 18-MONTH HEARING

At the hearing on December 10, Parents' attorneys asked to be relieved as counsel.  The court granted the requests.  Mother and Father asked to be self-represented.  The following exchange occurred:

"The Court:  And in order to do that, particularly in dependency where there's no Constitutional Right to represent yourself, you have to be able to show that you understand dependency law.  [¶]  So, sir, do you have experience in dependency law?

"[Father]:  What jurisdiction are we operating under; is it civil?  Criminal?  Or quasi criminal?

"The Court:  Well, I'm asking you that.  [¶]  Do you understand dependency law?

"[Father]:  I do.

"The Court:  Okay.  And we're at a contested 22, do you know that that means?

"[Father]:  I don't understand what that means.

"The Court:  Okay. Ma'am, do you understand dependency law?

"[Mother]:  Um, yes.

"The Court:  And we're at a contested 22, do you know what that means?

"[Mother]:  No.

6

"The Court: Do you know what the statutory ramifications are of being at a 22 hearing?

"[Father]: That doesn't sound Constitutional.

"The Court: I'm asking Mom.

"[Mother]: Um, no.

"The Court: Sir, do you understand the ramifications of being at a contest[ed] 22 hearing?

"[Father]: It doesn't sound Constitutional.

"The Court: Do you know the ramifications of being at a 22 hearing?

"[Father]: I don't understand. It sounds Unconstitutional.

"The Court: I'll deny your request to represent yourselves as I don't find that either have any basic knowledge of dependency law to which you can adequately protect your due process rights."

The juvenile court appointed new attorneys for Parents. Father objected and said, "We refuse that." The court set a pretrial settlement conference for February 2, 2021 and continued the 18-month hearing to February 25, 2021.

F.    EX PARTE COMMUNICATION (RECORD IN THE SECOND CASE)

On December 15, 2020, Parents corresponded with the juvenile court ex parte. Parents sent the court a document entitled "***Demand for Bill of Particulars*** [¶] ***Nature and Cause of Accusation***." In the document, Parents asserted that they are "his/her own proper person sui juris pursuant to the ***unpurviewed 6th Article of the Bill of Rights, the 9th Article of Amendment*** to, the ***Constitution for the united States(1787-***

*1791)* and other applicable provisions of law, to demand of the San Bernardino County District Attorney and/or California Attorney General a Bill of Particulars regarding the nature and cause of the accusations in the hereinabove mentioned citation in order that the Accused might be able to enter a *voluntary, knowing* and *intelligent* plea to the charges, ostensibly some or another alleged commercial 'crimes'."

The document continued: "Given that the record will establish that *California* is *NOT* a State admitted into '*this Union*', and thus is, at *best*(!), a *federal* (*insular*?) *territorial possession*, all officers of such territorial government are required to be appointed by the President, and/or a territorial Governor appointed by the President; accordingly Petitioner wishes to be presented with a *certified* copy of appointments of *ALL* 'official' actors in this case along with *certified* copies of their Oaths of Office; on request, Petitioner will present a *Supplementary Brief on Admission of New States* which, in concert with Petitioner's *Motion to Dismiss and Brief on the 14th Amendment*, will establish this position."

In a separate document, Parents requested a continuance due to "constitutional issues which go directly to the *apparent absence* of jurisdiction of the court." Additionally, Parents sent an acceptance of counsel on the conditions that counsel (1) "is *ordered* to serve and *FILE* all of the documents presented by Petitioner[s]"; and (2) is "educated in *constitutional law* who can present Petitioner[s'] multiple *unopposed* constitutional issues establishing the *ABSENCE* of jurisdiction of the trial 'court.' "

8

G.     PRETRIAL SETTLEMENT CONFERENCE (RECORD IN THE

       SECOND CASE)

The trial court held a pretrial settlement conference on February 2, 2021.  Prior to the settlement conference portion of the proceeding, the following exchange took place:

The Court:  "I understand that the parents, you're still asking—making a request to represent yourselves, correct?

"The Father:  No.

"The Mother:  No.

"The Father:  That's just a—it's more just a notice that we are suijuris [*sic*]. We're not asking for representation, we're not waiving any right to representation, we're just simply stating that we are suijuris [*sic*].  Suijuris [*sic*] is just a friend of the Court and that we're competent enough to handle our own legal affairs.

"The Court:  Okay.  But are you asking me to do an analysis to represent yourself?

"The Father:  No.  We don't need to represent ourselves, no.  We are suijuris [*sic*]."

The juvenile court went on to address Parents' ex parte documents.  The court denied the requests in the documents to the  extent they dealt with jurisdiction and constitutional issues.  Father asked if he needed to file a section 388 request to have the court address the documents.  The court explained that it just ruled, and Parents' attorneys could file a section 388 request if needed.  Father replied, "But we don't need

9

representation.  We can file it ourselves?"  The court said, "I've answered that question, sir."

Parents expressed concerns regarding their attorneys, so the juvenile court held *Marsden*[2] hearings for Parents.  In Father's hearing, he complained that his attorney had not responded to the conditional acceptance of counsel.  The court explained that attorneys are not conditionally appointed.  The following exchange occurred:

"The Father:  Well, I just—being competent enough to represent myself in any legal affairs really, you know, has me questioning what I need anyone to represent me for.

"The Court:  Okay.  So the Court has previously asked whether you wanted to be assessed to represent yourself.  You've indicated no that you don't wish to represent yourself. . . .  [O]ur local rules require competence under dependency law to even appear in court and in order to protect your due process rights, I'm not going to relieve him on that basis.

"The Father:  I feel that my constitutional rights are more important than any other—any other kind of conflicting right in this courtroom."

The juvenile court denied Father's *Marsden* motion without prejudice.  Father responded, "I can afford private counsel.  I don't need—"  The juvenile court explained, "I'm just here for the *Marsden* motion."

---

[2]  *People v. Marsden* (1970) 2 Cal.3d 118.

10

During Mother's *Marsden* motion, Mother complained that her attorney was not interested in arguing issues related to jurisdiction. Mother's attorney explained that the time to argue jurisdiction had passed. The juvenile court denied Mother's *Marsden* motion without prejudice.

At the end of the pretrial settlement conference, the juvenile court said that it did not agree with Parents' interpretation of the law, but Parents were "simply trying to exercise their right[s] as they see fit and . . . they've been easily directed and cordial with the Court."

On February 18, 2021, this court issued a stay of the 18-month hearing in the juvenile court.

## DISCUSSION

### I. THE FIRST CASE—CASE NO. E076259

#### A. *THE RECORD TO BE CONSIDERED*

At the outset, we note that "[i]t has long been the general rule and understanding that 'an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration.'" (*In re Zeth S.* (2003) 31 Cal.4th 396, 405.) Accordingly, in reviewing the issues in the first case, we will not utilize the record in the second case.

#### B. *INCORRECT LEGAL STANDARD*

Father contends the juvenile court erred by applying an incorrect legal standard when ruling on Parents' requests for self-representation. Mother joins in Father's argument.

11

We review the juvenile court's ruling for an abuse of discretion. (*In re A.M.* (2008) 164 Cal.App.4th 914, 926 (*A.M.*).) "[T]he abuse of discretion standard does not allow trial courts to apply an incorrect rule of law." (*County of Kern v. T.C.E.F., Inc.* (2016) 246 Cal.App.4th 301, 316.) That is because a "court's discretion is limited by the applicable legal principles." (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1144.) Thus, " '[a] trial court abuses its discretion when it applies the wrong legal standards applicable to the issue at hand.' " (*Doe 2 v. Superior Court* (2005) 132 Cal.App.4th 1504, 1517.)

"Section 317, subdivision (b) requires appointment of counsel for an indigent parent or guardian in a juvenile dependency case 'unless the court finds that the parent or guardian has made a knowing and intelligent waiver of counsel as provided in this section.' " (*A.M.*, *supra*, 164 Cal.App.4th at p. 923.) "Section 317, subdivision (b) has been interpreted to give a parent in a juvenile dependency case a statutory right to self-representation. [Citation.] This right is statutory only; a parent in a juvenile dependency case does not have a constitutional right to self-representation." (*Ibid.*)

"[I]n dependency proceedings, a parent's statutory rights, including the right to self-representation, must *always* be weighed against the child's right to a prompt resolution of the dependency proceeding. . . . [T]he juvenile court has discretion to deny the request for self-representation when it is reasonably probable that granting the request would impair the child's right to a prompt resolution of custody status *or* unduly disrupt the proceedings." (*A.M.*, *supra*, 164 Cal.App.4th at pp. 925-926.)

12

A juvenile court cannot deny a request for self-representation in order to "protect[] a person who is unskilled in the law and courtroom procedure." (*In re Angel W.* (2001) 93 Cal.App.4th 1074, 1084.) In the instant case, the juvenile court denied Parents' requests for self-representation because the court doubted Parents' ability to protect their due process rights. The court's desire to protect Parents is not a proper reason to deny Parents' request. (*Id.* at p. 1084.)

Section 317.5, subdivision (a), provides, "All parties who are represented by counsel at dependency proceedings shall be entitled to competent counsel." In San Bernardino County, the local rules of court require appointed and retained attorneys appearing in dependency court to have a certification of competency (Super. Ct. San Bernardino County, Local Rules, rule 1692), which can be obtained by representing parties in juvenile cases for six months or by participating in eight hours of training or education in juvenile law (Super. Ct. San Bernardino County, Local Rules, rule 1692.4). In the instant case, the juvenile court denied Parents' request because the court believed Parents needed to demonstrate a certain level of competence in dependency law. Those rules apply to attorneys, not to self-represented litigants. Thus, the local rules do not provide a reason to deny Parents' request for self-representation.

The Department contends the juvenile court did not err because the case was two years old and Parents' lack of understanding of the law could further delay a prompt resolution of the case. "Case law is clear . . . that getting the legal standard wrong means that a subsequent decision becomes *itself* a per se abuse of discretion even if, assuming the wrong standard, the decision is otherwise reasonable." (*Conservatorship*

13

*of Bower* (2016) 247 Cal.App.4th 495, 506.)  The Department fails to explain how, in the instant case, the juvenile court applied the correct law.  Instead, the Department tries to explain why the juvenile court's decision was otherwise reasonable.

Moreover, delay is an unlikely problem because the juvenile court described Parents as "easily directed and cordial," and the juvenile court was able to quickly dispose of Parents' various filings.  (See *In re Angel W.*, *supra*, 93 Cal.App.4th at p. 1085 ["The possibility of disruption or delay, however, exists to some degree with virtually all pro se litigants and the mere possibility alone is not a sufficient ground to deny self-representation"].)  As a result, the Department's argument is unpersuasive.

The juvenile court abused its discretion in denying Parents' request for self-representation by applying incorrect legal standards.  In the case of *A.M.*, *supra*, 164 Cal.App.4th at pages 928 through 929, the appellate court concluded that any error in the dependency court's denial of a request for self-representation was harmless under the standard of *People v. Watson* (1956) 46 Cal.2d 818, 836.  The appellate court explained that "[t]he case hinged on witness credibility."  The court noted that the father "was represented by competent counsel, and it is not reasonably probable [the father] could have conducted better cross-examination of witnesses."  (*Id.* at p. 929.)

In the context of criminal cases, an error related to self-representation cannot be reviewed for prejudice because a lawyer will typically have better results than a self-represented litigant, thus rendering most errors harmless.  The United States Supreme Court reasoned, "Since the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the [person requesting

to be self-represented], its denial is not amenable to 'harmless error' analysis.  The right is either respected or denied; its deprivation cannot be harmless." (*McKaskle v. Wiggins* (1984) 465 U.S. 168, 177, fn. 8; see also *Butler*, *supra*, 47 Cal.4th at p. 824.)

We recognize that juvenile dependency proceedings differ from criminal cases. In *In re James F.* (2008) 42 Cal.4th 901, 904-905, the Supreme Court considered whether "a juvenile court's error in the procedure used to appoint a guardian ad litem for a parent in a dependency proceeding requires automatic reversal of an order terminating the parent's parental rights, or whether instead the error is subject to harmless error review."  The high court concluded the error could be reviewed to determine if it was harmless, and that it was harmless in that case. (*Id.* at p. 905.)

In its analysis, the Supreme Court "observe[d] that juvenile dependency proceedings differ from criminal proceedings in ways that affect the determination of whether an error requires automatic reversal of the resulting judgment." (*In re James F.*, *supra*, 42 Cal.4th at p. 915.)  When comparing criminal and dependency cases, the court noted that "the ultimate consideration in a dependency proceeding is the welfare of the child [citations], a factor having no clear analogy in a criminal proceeding." (*Ibid.*)  The Supreme Court concluded, "We cannot agree . . . that prejudice is irrelevant in a dependency proceeding when the welfare of the child is at issue and delay in resolution of the proceeding is inherently prejudicial to the child." (*Id.* at p. 917.)

We need not determine in this particular case whether the denial of the right of self-representation in a dependency case is subject to harmless error review.  The issue of self-representation can be timely raised at multiple points during a dependency case

because a dependency case involves "several evidentiary hearings, each amounting to a [separate] 'trial.'" (*In re A.M.*, *supra*, 164 Cal.App.4th at p. 927.) On February 18, 2021, this court issued a stay of the 18-month hearing in the juvenile court. Thus, the 18-month hearing still has not taken place. Therefore, if we were to conduct a harmless error analysis and were to find the juvenile court's error harmless, then Parents could request to represent themselves going forward, which would be at the 18-month hearing.

Alternatively, if we found the error were prejudicial, such that reversal were required, we would direct the juvenile court to ask Parents if they want to represent themselves at the 18-month hearing, which is the December 2020 hearing from which Parents are appealing in the first case, and which the juvenile court had continued to February 2021. Thus, whether (1) affirming and looking forward to the next hearing, or (2) reversing and looking backward to the December 2020 hearing, the 18-month hearing is the relevant hearing in both situations. So, whether we affirm or reverse, Parents have the opportunity to have the juvenile court again decide the issue of self-representation at the 18-month hearing, utilizing the correct legal standard.

In the interest of judicial efficiency and because the practical result is the same whether the error is harmless or prejudicial, we will affirm with directions for the juvenile court to ask Parents, prior to or at the start of the 18-month hearing, whether Parents are requesting to represent themselves. If Parents state that they want to be self-represented, then the juvenile court shall consider those requests. We note that we must affirm, rather than reverse, because we can only reverse if we hold an error is prejudicial. (See Code Civ. Proc., § 475 [reversal only allowed if error is prejudicial].)

16

### C.     *CONCESSION REGARDING THE LAW*

Mother contends the juvenile court erred in applying the law.  Father joins in her argument.  Mother asserts that a request for self-representation may be denied if the person making the request "lacks the basic knowledge of the law needed to proceed." In support of that assertion, Mother cites "*People v. Curry*" or "*Curry v. Superior Court*" at "25 Cal.App.3d 221."  The case at 25 Cal.App.3d 221 is *People v. Lawrence* (1972) 25 Cal.App.3d 213, at page 221, which concerns competency of counsel.  It is unclear what case Mother intended to cite.  Nevertheless, as explained *ante*, a request for counsel cannot be denied based on the desire to protect a person who is unfamiliar with the law  (*In re Angel W.*, *supra*, 93 Cal.App.4th at p. 1084), and the local court rules do not require a self-represented litigant to have a certificate of competency (Super. Ct. San Bernardino County, Local Rules, rule 1692; see also § 317.5, subd. (a)).

We address the issue regarding the juvenile court's application of the law because it is also raised in the Department's brief.  In the Department's respondent's brief, it asserts Parents concede that a " 'basic <u>knowledge</u> of the law' " is required for self-representation.  The Department cites no law to support the assertion that familiarity with the law is required for self-representation.  Therefore, regardless of the alleged concession, we conclude the juvenile court erred.

### D.     *CONSTITUTIONAL RIGHT*

Mother "questions the underlying assumption that the right of self-representation is only statutory."  To the extent Mother was asserting, rather than merely questioning, that she has a constitutional right to self-representation, the issue is moot because we

can offer Parents no further relief on the issue of self-representation. (*In re Stephon L.* (2010) 181 Cal.App.4th 1227, 1231 [an issue is moot when the court cannot provide effective relief].)

      E.    *ICWA*

Before these two appeals, Parents appealed in the earlier stages of this dependency case. (Court of Appeal case No. E072045.) In the prior appeal, Parents filed no-issue briefs (*In re Sade C.* (1996) 13 Cal.4th 952), and this court dismissed Parents' appeals. Mother asserts that the record from the prior appeal reflects an ICWA error occurred.

Mother contends that, in the prior record, a December 20, 2018, letter from the Cherokee Nation of Oklahoma reflects that the children are not eligible for membership in the tribe, but the record indicates that the Department did not send notices to the tribes until January 8, 2019. Therefore, Mother questions whether there were prior notices sent to the tribes that were omitted from the record. Mother asserts she has advised the juvenile court and all attorneys of the potential issue and she is presenting the issue on appeal "as a prophylactic measure only in the hope that the [juvenile] court will address the problems before it becomes necessary for this court to rule on them."

The Department asserts the juvenile court, in response to Mother's letter, is in the process of curing any ICWA deficiencies. Therefore, the Department requests that we not address the issue. The Department requests we take judicial notice of February 2, 2021, minute orders from the juvenile court indicating the court is addressing any

ICWA issues. We grant the request for judicial notice. (Evid. Code, § 452, subd. (d).)[3] In Mother's appellant's reply brief, she asserts she has no objection to her "arguments regarding ICWA be[ing] dismissed without prejudice." Because it appears Mother is withdrawing her contention, we will not address the merits of the issue.

II. *THE SECOND CASE—CASE NO. E076491*

In the second case, Parents contend the record supports the assertions they made in the first case. The issues raised in the first case were resolved *ante*. We can provide Parents no further relief by addressing the same issues a second time. Accordingly, we will dismiss the second case as moot. (*In re Stephon L.*, *supra*, 181 Cal.App.4th at p. 1231.)

The Department asserts that Parents' statements on February 2, 2021, regarding no longer wanting to be self-represented, render the issue of self-representation moot. The Department requests Parents' "appeals be denied in their entirety." It is unclear if the Department is referencing all four appeals—both appeals in both cases—or just the two appeals in the second case.

To the extent the Department is focused only on the second case, we have determined the second case is moot because it repeats issues that were already decided in the first case. To the extent the Department is asserting the first case is moot, that

---

[3] In Mother's appellant's reply brief, she opposes the request for judicial notice because the relevant minute orders are in the record for the second case. As explained *ante*, we are not utilizing the record from the second case in deciding the first case. (*In re Zeth S.*, *supra*, 31 Cal.4th at p. 405.) Further, any opposition to the request for judicial notice should have been presented in a separate opposition. (Cal. Rules of Court, rule 8.54(a)(3).)

contention was not raised in the first case. We decline to utilize the briefs in the second case to decide the first case. We will dismiss the second case as moot because it repeats issues that were already decided in the first case.

## DISPOSITION

In Court of Appeal case No. E076259, the denials of Parents' requests for self-representation are affirmed. The juvenile court is directed to ask Parents, prior to or at the start of the 18-month hearing, if Parents still want to be self-represented. If Parents want to be self-represented, then the juvenile court is directed to consider those requests in accordance with the views expressed in this opinion. This court's February 18, 2021, order staying the 18-month hearing in the juvenile court is dissolved.

Court of Appeal case No. E076491 is dismissed as moot.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:

RAMIREZ
P. J.

RAPHAEL
J.